UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 19-50 (ADM/TNL) |
| | ) | |
| v.            Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTION FOR** |
| JOHNTEZ LEONDIS RANDLE, | ) | **SUPPLEMENTAL DISCOVERY** |
| | ) | |
| Defendant. | ) | |

Johntez Randle, through undersigned counsel, moves the Court to order the government to provide Mr. Randle with supplemental discovery relevant to a motion he has filed pursuant to *Franks v. Delaware*. As discussed more fully below, Mr. Randle has raised a colorable claim under *Franks*, and evidence of witness credibility in this context falls under the disclosure umbrella of *Brady v. Maryland.* Thus, additional discovery relevant to the alleged controlled purchase of narcotics from Mr. Randle – which was used to obtain search warrants at issue in this case – must be disclosed to the defense.

**I.    Factual Background and Procedural History**

On January 30, 2019, Officer Efrem Hamilton of the Minneapolis Police Department applied for three search warrants that are the subject of pretrial motions to suppress evidence in this case: one for a home on Vera Cruz Lane in Brooklyn Park, one for Mr. Randle's person, and one for an Audi vehicle. ECF No. 28, Ex. 1. Each search warrant affidavit was drafted by Hamilton and relies on an alleged confidential informant's assertion that there was a male alleged to be selling crack cocaine in and around Minneapolis. *Id*. Additionally, each of the supporting affidavits indicates that Hamilton, a Minneapolis Police officer since 2007, identified that male as "Johntez

1

Leondus [sic] RANDLE" through unspecified "various investigative techniques." *Id*. In each of the three affidavits, the affiant goes on to say that he "has had many interactions with RANDLE including arrests and undercover crack cocaine buys from RANDLE." *Id*. Relevant to Mr. Randle's argument here, the affidavits use the plural form of the words "arrest" and "buy." Thus, Hamilton affirmatively represented to the warrants' reviewing judge that he had arrested Mr. Randle more than once, *and* purchased crack cocaine in an undercover capacity from Mr. Randle more than once.

An investigator for the Office of the Federal Defender sought records — including police reports from the Minneapolis Police Department — for all of Mr. Randle's previous contacts with Hamilton from 2006 to the present day. Those reports indicate that Hamilton had only one undercover buy and one arrest in his past. This buy and arrest occurred in 2012. While a separate police report indicates that Mr. Randle and Hamilton were both at the scene of another person's arrest in 2008, that report indicates that Mr. Randle was released without an arrest or charges. Thus, the use of plural terminology regarding "arrests" and "buys" appears to be inaccurate. This inaccuracy is not immaterial. Mr. Randle argues here that Hamilton's representations to the reviewing judge that he was familiar with Mr. Randle were crucial to the probable cause determination. The number of contacts and the timing of those contacts is therefore relevant.

Mr. Randle filed several pretrial motions in this case, including a motion for a hearing pursuant to *Franks v. Delaware,* accompanied by supplemental legal briefing, as well as a motion to suppress pursuant to the Fourth Amendment. ECF No. 21, 22, and 23.

Confronted with the discrepancy regarding how many arrests and buys occurred in the past, Hamilton prepared a sworn declaration filed with the government's response to Mr. Randle's *Franks* motion. ECF No. 28, Ex. 2. However, that declaration does little, if anything, to help the government's position. In fact, it casts further doubt on the accuracy of Hamilton's representations in the search warrant affidavits. In that declaration, Hamilton made no attempt to correct his prior – and inaccurate – statement that he had arrested Mr. Randle more than once.

In an attempt to support Hamilton's credibility, the declaration also stated that there was one other occasion when he conducted a controlled buy of crack cocaine from Mr. Randle in conjunction with another Minneapolis police officer on October 18, 2018. *Id*. In support of that declaration, Hamilton submitted a copy of an administrative record from the Minneapolis Police Department. This record purports to document a controlled buy that occurred on October 18, 2018 at 11:53 a.m. at 4XX Broadway Avenue W. in Minneapolis, Minnesota. ECF No. 28, Ex. 3. There is no other identifying information in that record, including any mention of Mr. Randle, Hamilton himself, or any other details about the controlled buy. *Id*. In other words, standing alone, the document lacks any meaningful corroboration of Hamilton's claims in the declaration.

Notably, Hamilton's declaration uses two different spellings of Mr. Randle's last name ("Randle" and "Randall"), calling into question whether Hamilton has correctly identified Mr. Randle as the party involved in the alleged controlled buy in October 2018 or the alleged controlled buy referenced in the search warrant affidavits at issue in this case. *Id*.

After the government filed Hamilton's declaration, an investigator for the Office of the Federal Defender obtained records from the company that Mr. Randle worked for in October of 2018. Those documents show that Mr. Randle was working on the day and time that the controlled buy is alleged to have occurred and that Mr. Randle was not in Minneapolis at the time Hamilton claims to have conducted a controlled buy from Mr. Randle at the listed Minneapolis address.

Hamilton's search warrant affidavits noted that within 72 hours of signing those affidavits (i.e., at some point between January 27 and 30, 2019), he used a confidential reliable informant ("CRI") to conduct a controlled purchase of crack cocaine from Mr. Randle. ECF No. 28, Ex. 1. To date, the evidence of this controlled purchase and the details of the transaction (*e.g.*, parties involved, time, location, purchase amount, etc.) have not been made available to the Defense. Indeed, the only information provided in the affidavits generically states, without corroboration, that the CRI was given "an amount of pre-recorded buy funds" and was "directed to go to an area of Minneapolis" to meet Mr. Randle. *Id.*

Given the issues identified above regarding Hamilton's statements in the search warrant affidavits and the declaration in response to Mr. Randle's *Franks* motion, counsel for Mr. Randle conferred with the attorney for the government and requested additional discovery regarding the controlled buy alleged to have occurred within 72 hours of January 30, 2019. The government declined to provide that additional discovery. Thus, Mr. Randle submits the instant motion.

## II. Argument

### A. Evidence Related to Witness Credibility and Impeachment Must Be Disclosed.

Defendants have no general constitutional right to discovery in criminal proceedings. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, the Supreme Court held in *Brady v. Maryland* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The touchstone of the government's disclosure obligations is the materiality of the information (i.e., evidence for which "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Importantly, the government's obligation to disclose exculpatory information includes evidence that may be used to substantially impeach the credibility of a government witness. *Bagley*, 473 U.S. at 678; *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Impeachment evidence is evidence favorable to an accused so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. *See Brady*, 373 U.S. at 87; *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959). The government may not use false evidence, including false testimony, to obtain a conviction, and that principle "does not cease to apply merely because the false testimony at issue goes only to the credibility of the witness." *Napue*, 360 U.S. at 269 ("The jury's estimate

of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of a witness in testifying falsely that a defendant's life or liberty may depend").

The Court's decisions on Mr. Randle's pretrial motion to suppress evidence and his motion pursuant to *Franks v. Delaware* will depend in significant part on Hamilton's affidavits. As noted above, Hamilton made several representations in the affidavits and in his supplementary declaration that appear to be either inaccurate, contradictory, or false. As noted *supra*, preliminary investigation by the Defense has already cast doubt on the veracity and credibility of Hamilton's sworn testimony in both the affidavits and the declaration, and Mr. Randle requests that the government disclose the following regarding the alleged January 2019 controlled buy:

1. Police reports regarding the controlled buy;
2. Date and time of the controlled buy;
3. Specific location of the controlled buy;
4. Description of any suspect vehicles involved in the controlled buy;
5. Records regarding the buy funds used during the controlled buy;
6. Phone number Mr. Randle was alleged to have used to arrange the controlled buy;
7. Any evidence that controlled buy funds were later located by police;
8. Any laboratory reports regarding testing of drugs purchased in the controlled buy;
9. Any documents demonstrating chain of custody of drugs purchased in the controlled buy;
10. The image of Mr. Randle allegedly shown to the CRI;
11. Names of officers who conducted surveillance of Mr. Randle after the alleged controlled buy;
12. Recordings audio or video surveillance of alleged controlled buy;
13. Evidence of the reliability of the CRI; and
14. Any other administrative or factual information related to the January 2019 controlled purchase which falls under the purview of *Brady* and *Giglio*.

Hamilton's credibility is an important issue moving forward, and evidence related to the alleged controlled buy in late January 2019 is crucial to Mr. Randle's argument that he should be granted a *Franks* hearing and to the development of effective cross-examination and impeachment. The government has already disclosed some information regarding the alleged interactions between Hamilton and Mr. Randle from October 2018 (*e.g.*, ECF No. 28, Ex. 1, Ex. 2), and Mr. Randle is merely asking that the government disclose the same information as it relates to the alleged controlled buy that occurred in late January 2019. To the extent that the government has information tending to cast doubt on or contradict the information set forth in Hamilton's search warrant affidavits, that information must be produced. The due process requirements of the Fifth Amendment mandate the disclosure of evidence that is material to Mr. Randle's defense, including material that is relevant to witness credibility and impeachment.

If the Court concludes that it is not proper to disclose the sought evidence to Mr. Randle, he argues in the alternative that the government submit it to the Court for in camera review, and that the Court then determine if the evidence should be disclosed to Mr. Randle.

### III. Conclusion

Based on the above-stated arguments, Mr. Randle respectfully requests that the Court compel the disclosure of the above-specified information, as well as any other information related to Officer Efrem Hamilton's past interactions with Mr. Randle that falls within the purview of *Brady* and *Giglio*.

Dated: July 3, 2019					Respectfully submitted,

							*s/ Reynaldo A. Aligada, Jr.*
							_____
							REYNALDO A. ALIGADA, Jr.
							Attorney ID No. 319776
							Attorney for Defendant
							107 U.S. Courthouse
							300 South Fourth Street
							Minneapolis, MN 55415