UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-50(1) (ADM/TNL)

_____

United States of America,

       Plaintiff,    **MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS THE FRUITS OF AN ILLEGAL SEARCH AND SEIZURE**

vs.

Johntez Leondis Randle,

       Defendant.

_____

Johntez Randle submits this memorandum in support of his Motion to Suppress fruits of an unlawful search and seizure.

As an initial matter, as argued in his motion for continuance of the motions hearing, Mr. Randle contends that it would be premature to decide this motion at this time. Mr. Randle has made motions for additional discovery and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Mr. Randle believes that it would be appropriate to delay ruling on the motion to suppress the fruits of the search warrant until the Court has ruled on the other motions.

But based on a four-corners review, the warrant affidavit used to justify the search of a home on Vera Cruz Lane in Brooklyn Park failed to provide a nexus between the alleged illegal conduct and the place to be searched.[1] Evidence obtained from the search

---

[1] A copy of the warrant affidavit and related materials has been previously filed under seal as Exhibit A (DKT. 23).

1

of the Vera Cruz Lane residence must be suppressed as fruit of the poisonous tree. The exclusionary rule must be allowed to operate effectively and deter police from using such evidence when the Fourth Amendment violation is so evident, as no reasonable law enforcement officer could rely on the warrants in objective good faith.

## I. Background

In this four-corners challenge to the search warrant at issue here—filed separately with the court, *see supra* n.1—the prominent background facts are summarized as follows:

On January 30, 2019, Minneapolis Police Officer Efrem Hamilton drafted an application and affidavit for a search warrant, later presenting both to a Hennepin County District Court Judge for review and signature. *See* Exhibit A. The application sought judicial approval for a police search of a home in Brooklyn Park, on Vera Cruz Lane. The police requested to search the home for evidence of drug dealing, packaging equipment, records, money, cell phones, firearms, and video surveillance equipment.

In his affidavit submitted to the reviewing judge, the officer explained that police were in contact with a confidential reliable informant ("CRI"). The affidavit explained that police received information from the CRI that "a male" was selling crack cocaine in and around the city of Minneapolis. Officer Hamilton positively identified the male as Johntez Randle after using "various investigative techniques." The officer did not specify what investigative techniques were actually used.

The affidavit further detailed that, at the instruction of the police, the CRI had initiated a purchase of illegal drugs from Mr. Randle, who was accompanied by an unidentified driver. It then explained that, after purchasing the illegal drugs, the CRI was shown a color photo of Mr. Randle, and confirmed that Mr. Randle was the person from whom the drugs were purchased.

Missing from the affidavit, however, was any information about a specific (or even generalized) location of where the transaction occurred.  The document did not mention anything about where the CRI made the claimed purchase, only that Mr. Randle arrived to the unspecified location in a silver 2008 Audi Q7 Sports Utility Vehicle. Moreover, other than the claim that the purchase took place "within the past 72 hours," Officer Hamilton made no reference to exactly when the transaction allegedly occurred. The affidavit did not indicate where the alleged drugs were stored or where the cash proceeds were kept.  In short, there is no information linking the suspected contraband to any physical location.

Instead, the affidavit application sought to search the home on Vera Cruz Lane by merely suggesting that Mr. Randle lived there.  Notably, this attempt is made by way of two conclusory sentences that contain no evidence of corroboration or reliability for their conclusions.  The affidavit stated that Mr. Randle is on U.S. Probation and has 9947 Vera Cruz Lane "listed" as his reported address until 2021. It did not indicate that police ever saw Mr. Randle enter or exit his home, and contained no mention of any prior surveillance of the area. The only information produced by the affidavit is that police

3

observed Mr. Randle drive to the Vera Cruz Lane residence after interacting with the informant.

The aforementioned information is the sum and total of the evidence presented to the state court judge, and a search warrant for the Vera Cruz Lane home was signed. Shortly after that, police executed the warrant and seized numerous items from the home. Mr. Randle was arrested during the search of the home. Warrants granting the search of Mr. Randle's person and his silver 2008 Audi Q7 Sports Utility Vehicle were also executed at that time.[2]

**II.    Argument**

The express purpose of the Fourth Amendment is to secure the "houses, papers, and effects of this nation's citizens from governmental intrusion." U.S. Const. amend. IV. Its protective force is strongest at the private home's doorstep. *Kyllo v. United States,* 533 U.S. 27, 31 (2001). Thus, any police officer seeking to invade a private home must first obtain a valid search warrant upon showing probable cause to the satisfaction of a neutral magistrate. *Groh v. Ramirez,* 540 U.S. 551, 559-60 (2004). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee,* 757 F.3d 810, 819 (8th Cir. 2014) (citation and internal punctuation omitted). Probable cause means that, given all the circumstances set forth in

---

[2] The same warrant affidavit was rejected for failing to establish nexus in the co-defendant's case in Hennepin County District Court. *See* Order, June 4, 2019, *State v. Elmore*, Case No. 27-CR-19-2841, *notice of appeal filed* June 10, 2019 (App. Case No. A19-892).

4

the affidavit, there exists sufficient information to conclude that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Mr. Randle asserts that the warrant affidavit at issue here failed to make the requisite probable cause presentation, and thus the fruits of the illegal search must be suppressed.

> **A. The warrant affidavit lacked the requisite showing of probable cause particularized and linked to the place to be searched**

The overwhelming defect with the warrant affidavit in this case is its failure to draw the requisite link between the probable-cause presentation set forth in the warrant affidavit and the particular location selected for police invasion. *Gates,* 462 U.S. at 238. This is often referred to as the "nexus" requirement, *e.g., United States v. Skarda,* 845 F.3d 370 (8th Cir. 2016) (quotation marks omitted) (quoting *United States v. Tellez,* 217 F.3d 547, 550 (8th Cir. 2000)), and the Fourth Amendment demands it to ensure the police narrowly tailor any invasion to the probable-cause showing set forth in the warrant affidavit and never beyond, *e.g., Ybarra v. Illinois,* 444 U.S. 85, 91 (1979). As relevant in this case, the key rule is that:

> Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. ***Instead, there must be additional evidence linking the person's home to the suspected criminal activity.***

*United States v. Roach,* 582 F.3d 1192, 1202 (10th Cir. 2009) (citations and punctuation omitted); *accord, e.g., United States v. Frangenberg,* 15 F.3d 100, 102 (8th Cir. 1994) (probable-cause presentation insufficient where warrant affidavit only noted an individual possessed a prescription bottle containing a small amount of illegal drugs and failed to

draw connection to "place to be searched"); *see also, e.g., United States v. Hogan,* 25 F.3d 690, 692-93 (8th Cir. 1994) (warrant affidavit supplied sufficient information of illegal drug sales activity to justify search of individual's home and pickup truck, but not the automobile seized by police).

In this case, the affidavit supplies a cursory and temporally unclear explanation as to why the police suspected Mr. Randle of participating in an illegal drug sales operation. However, it fails to supply the requisite "additional evidence linking the person's home to the suspected criminal activity." *Roach,* 582 F.3d at 1202. Instead, even viewing the allegations in favor of the affiant's facts, the affidavit only says that the home on Vera Cruz Lane is "listed" as Mr. Randle's reported address. At most, that information arguably ties Mr. Randle to the home, but not his alleged drug activity to the home. As noted above, the CRI met with Mr. Randle at an unspecified place away from the Vera Cruz Lane home. If the interaction between Mr. Randle and the CRI took place at the home, the affiant undoubtedly would have included such information in the affidavit. Simply put, the police did not even attempt to show the judge that Mr. Randle had or stored drugs at the Vera Cruz Lane address.

This information is relevant because the nexus requirement makes clear that the warrant application must show that evidence of a crime is likely to be found in a person's home, not just that police suspect a person of a crime. *See, United States v. Rios-Uscanga,* No. 16-CR-316-RHK-KMM, 2017 WL 1534746, at *4 (D. Minn. Mar. 13, 2017, *report and recommendation adopted,* CR-16-316(1) RHK-KMM, 2017 WL 1534745 (D. Minn. Apr. 26, 2017) (warrant failed to establish adequate nexus by

showing no tie between the house and a defendant's illicit activities). "[I]t cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir. 1970); *see also, States v. Helton,* 314 F.3d 812, 821 (6th Cir. 2003) (where investigation revealed a defendant was closely connected to possession of narcotics, a search warrant for his home was invalid without any reliable evidence linking that residence to the drug trade); *United States v. Frazier,* 423 F.3d 526, 532 (6th Cir. 2005) ("The critical element in a reasonable search is not that the owner of property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.") (quoting *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978). In other words, just because a person is suspected of a crime does not give police the authority to search that person's home.

In this case, the probable-cause/nexus presentation was wholly insufficient to justify a police search of the Vera Cruz Lane home. The affidavit contained no showing that Mr. Randle completed a drug sale at the home, stored drugs there, or had any anything else associated with a drug operation there. Case law is instructive in providing examples of how police can properly tie a person's illegal conduct to that person's home, justifying a valid search. For example, police often claim that criminal activity actually occurred at the place to be searched. *See, e.g., United States v. Adams,* 401 F.3d 886, 893 (8th Cir 2005) (probable cause justified warrant where defendant engaged in drug activity at his house, which was established by earlier electronic surveillance intercepting

conversations from a telephone number assigned to that house). However, this well-established mode of making the requisite nexus showing was not made nor even attempted.

Accordingly, the warrant affidavit arguably may show probable cause that a particular person has committed an offense (perhaps permitting arrest and search of that person), but it undoubtedly fails to demonstrate the requisite probable cause to invade the person's home (rendering such search and seizure unlawful). *E.g. Frangenberg,* 15 F.3d at 102; *accord, e.g., Frazier,* 423 F.3d at 533 ("[T]he allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence."). In sum, the warrant affidavit contained a facially insufficient probable-cause/nexus presentation. Probable cause to invade the home on Vera Cruz Lane was missing, and the resulting search, seizure, and fruits must be suppressed.

### B. The invasion cannot be salvaged by way of the *Leon* good faith doctrine

The government will likely argue that the search is permissible under the good-faith exception to the exclusionary rule articulated in *United States v. Leon,* 468 U.S. 897, 919-20 (1984). In *Leon,* the Supreme Court held that a search pursuant to an erroneously issued warrant may be upheld in some instances, *but only so long as the police so rely on the warrant in objective good faith. Id.* at 920. In this context, "good faith" clearly means a *lawful* effort by police to comply with the Fourth Amendment's strictures and intent. *Id.* In other words, a police invasion—even if permitted by a warrant's express terms—will result in suppression when the warrant affidavit is "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable . . . or when the warrant [is] so facially deficient . . . that the executing officer cannot reasonably presume it to be valid." *Id* at 923.

Put differently, the *Leon* good-faith exception asks "whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Houston,* 665 F.3d 991, 995 (8th Cir. 2012) (citations and internal punctuation omitted). Under that standard, *Leon* will not save a warrant where a well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Malley v. Briggs,* 475 U.S. 335, 345 (1986). Moreover, it will not save a facially invalid warrant, particularly where the executing officer was also the drafter. *Ramirez,* 540 U.S. at 563-564.

The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens. *Leon,* 468 U.S. at 919. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier,* 422 U.S. 531, 539 (1975) (quoting *Michigan v. Tucker,* 417 U.S. 433, 447 (1974)). *Leon* aims to balances the exclusionary rule with the interest of promoting warrant applications over warrantless searches. 468 U.S. at 919-21.

In this case, *Leon* cannot save the search because "[w]ithout any nexus between the criminal activity and the residence, reliance upon this warrant would be completely unreliable and would place it beyond the good faith exception." *United States v. Kemper,* 375 F. Supp. 2d 551, 554 (E.D. Ky. 2005) (in a murder case, stale information did not

support probable cause and the good faith exception to the exclusionary rule was not applicable). Further, when an "affidavit[] simply do[es] not say very much about [the defendant] or his residence," officers cannot reasonably rely on the issuing judge's probable cause determination. *United States v. Herron,* 215 F.3d 812, 814 (8th Cir. 2000). In *Herron,* a search warrant was issued for Herron's residence, following his alleged involvement in a relative's marijuana growing operation. While the supporting affidavits included his prior marijuana convictions and his family relationship to the marijuana growers, "the affidavits [made] only two passing references to the Herron residence" and only three references to Herron. *Id.* at 815. In determining that suppression was warranted in spite of the good faith exception, the Eighth Circuit ruled that "the lack of probable cause in the affidavits would have been apparent to reasonable officers." *Id.* The clear lack of probable cause in this case is so obvious that any reasonable officer could plainly see it on the face of the warrant.

Courts have sometimes invoked the *Leon* rule in cases involving a deficient probable-cause/nexus presentation. In those cases, however, there must exist "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id.* at 749. By contrast, the *Leon* rule cannot revive a search and seizure where the four corners of the warrant affidavit do not provide any evidence connecting suspected criminal activity to the place to be searched. *Id.* at 751-52. This case presents the latter situation, and for this reason the *Leon* rule cannot be invoked to revive the unlawful search and seizure at issue here. *See, id.*

### III. Conclusion

For these reasons, the Court should grant the motion to suppress.

Dated: September 13, 2019                Respectfully submitted,


                                         <u>S/Thomas H. Shiah</u>
                                         Thomas H. Shiah #100365
                                         331 Second Ave South, Ste 705
                                         Minneapolis, Minnesota 55401
                                         (612) 338-0066

                                         Attorney for Defendant