# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Criminal No. 19-50(1) (ADM/TNL)

United States of America,

                         Plaintiff,

vs.

Johntez Leondis Randle,

                         Defendant.

**THIRD MEMORANDUM
IN SUPPORT OF MOTION
FOR HEARING PURSUANT TO
*FRANKS v. DELAWARE***

Defendant Johntez Randle has submitted two previous memoranda in support of his motion for a *Franks* hearing, one through prior counsel and one through current counsel. In response to the Court's order, this memorandum will present Mr. Randle's argument that the Court should hold a hearing pursuant to *Franks* to determine whether Off. Efrem Hamilton deliberately or recklessly made false statements in an affidavit that misled a magistrate into signing the search warrants for the house on Vera Cruz, the Audi, and Mr. Randle's person.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court considered whether a reviewing court could, under certain circumstances, delve into the contents of an affidavit presented in support of a search warrant to examine its veracity. The Court ultimately decided that such an examination was permitted under certain circumstances. Although the Court made clear that a "presumption of validity" applied to an affidavit submitted in support of a warrant, that presumption is not insurmountable. *Franks*, 438 U.S. at 171.

In order to obtain a hearing in which a reviewing court will look beyond the four corners of the affidavit to examine its truthfulness, a defendant must meet three requirements. First, the defendant must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit. False statements include omissions of material fact if "police omitted the information with the intent to make, or in reckless disregard of whether they made, the affidavit misleading." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993). Second, these allegations must be accompanied by an offer of proof, including affidavits or sworn or otherwise reliable evidence. Third, the defendant must establish that the allegedly false statement was necessary to the finding of probable cause, or that the material omission "would be clearly critical to the finding of probable cause." *Id*. at 1235. If the defendant clears these three hurdles, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks,* 438 U.S. at 155, 171.

If a hearing is held, a defendant must show the following to prevail on a *Franks* challenge:

> (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and
> (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented.

*United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir. 2013) (*quoting United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011); *see also United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986) (extending *Franks* to deliberate omissions.)

There are three search warrants in this case: one for a house on Vera Cruz Lane in Brooklyn Park, one for Mr. Randle's person, and one for an Audi vehicle. These warrants and supporting affidavits were previously submitted to the Court as Exhibit A to prior counsel's *Franks* memorandum. (ECF Doc. 23.) Each search warrant focuses on a male alleged to be selling crack cocaine in Minneapolis. Each of the supporting affidavits state that the affiant, a Minneapolis Police officer since 2007, identified that male as Johntez Randle through unspecified "various investigative techniques." In each of the three affidavits, the affiant goes on to say that he "has had many interactions with RANDLE including arrests and undercover crack cocaine buys from RANDLE." Relevant to Mr. Randle's argument here, the affidavits use the plural form of the words "arrest" and "buys", which means that the affiant represented to the warrant's reviewing judge that he had arrested Mr. Randle more than once, *and* purchased crack cocaine in an undercover capacity more than once.

An investigator for the Office of the Federal Defender sought records – including police reports from the Minneapolis Police Department – for all of Mr. Randle's contacts with the Affiant of the search warrants in question from 2006 to the present day. Those reports indicate that the Affiant has had only one undercover buy and one arrest in his past. This buy and arrest occurred in 2012. While a separate police report indicates that Mr. Randle and the Affiant were both at the scene of another person's arrest in 2008, that report

indicates that Mr. Randle was released without an arrest or charges.[1] Thus, Off. Hamilton's reference to "arrests" and "buys" in the plural appears to be inaccurate.

To support the affidavit, the government took the unusual step of submitting a Declaration of Efrem Hamilton. (ECF Doc. 28-2.) That declaration implicitly acknowledges that Off. Hamilton's assertion in his warrant affidavit that he had arrested Mr. Randle multiple times was false, as it makes no attempt to dispute that fact. As Mr. Randle acknowledged in his first *Franks* memorandum, Off. Hamilton did arrest Mr. Randle once in 2012.

The declaration does seek to support the affidavit's allegation of multiple "undercover buys"—in addition to the one that led to Mr. Randle's arrest in 2012—by claiming that, on October 18, 2018, Off. Hamilton was working undercover when he bought crack cocaine from Mr. Randle. As support for this claim, Off. Hamilton submitted a Minneapolis Police Department report from Off. Paul Huynh. (ECF Doc. 28-3.) The report lists neither Off. Hamilton's name nor Mr. Randle's, but simply appears to document the recovery of crack cocaine during an undercover buy. The document lists the address where this occurred as 421 Broadway Avenue West in Minneapolis, and the "Occurred On" date is listed as "OCT-18-2018 (THU.) 1153."

Mr. Randle is offering two affidavits to prove that he had no part of this 2018 undercover buy. First, there is an affidavit sworn by Denise Evans. (Ex. 1.) As she explains, Ms. Evans owns Busy Bee, a delivery company, and she employed Mr. Randle as a driver

---

[1] These reports were offered as Exhibits B and C to the memorandum of prior counsel. (ECF Doc. 23.)

for a time period including the date of the alleged undercover buy. Her company's records show that Mr. Randle was working as a driver on Oct. 18, 2018, making numerous stops for pickups and deliveries. Specifically, her records show that Mr. Randle was preparing a delivery at a warehouse in Mendota Heights at 1153, the time listed in the report submitted by Off. Hamilton.

Second, Mr. Randle has sworn an affidavit affirming that he had no part of this alleged buy on October 18, 2018. (Ex. 2.) Mr. Randle again acknowledges the undercover buy and arrest from 2012, but he has not had any drug transactions with Off. Hamilton at any other time. (*See* Ex. 2.) This alleged October 2018 crack cocaine did not occur, or if it did, it did not involve Mr. Randle.

Off. Hamilton therefore significantly and intentionally overstated his relationship with and knowledge of Mr. Randle in his warrant affidavit. One undercover buy led to one arrest in the same incident, and Off. Hamilton neglected to add the significant fact that the buy/arrest was in 2012—more than six years prior to Off. Hamilton's affidavit. Rather than acknowledging the age of this prior incident, Off. Hamilton chose to expand this one six-year-old buy/arrest into multiple "arrests" and multiple "undercover crack cocaine buys."

Moreover, Off. Hamilton says in the affidavit that he knows that the Audi belongs to Mr. Randle because he checked DVS registration records. However, an investigator working with undersigned counsel has obtained Mr. Randle's registration information for his Audi. (Ex. 3.) That registration shows that Mr. Randle's address is listed as 1917 Stevens Avenue South, Minneapolis, Minnesota, 55403. Mr. Randle's limited driver's license (Ex. 4) and Minnesota state ID (ECF Doc. 50 at 1 (although the address is redacted,

the ZIP code is 55403, which matches the Stevens Avenue address but not Vera Cruz)) show the same address: Stevens Avenue, not Vera Cruz.

In his warrant affidavit, Off. Hamilton twice mentions checking DVS records, first when checking the Audi's registration and then confirming the status of Mr. Randle's driver's license. Those records both showed Mr. Randle's address as Stevens Avenue. Off. Hamilton did not tell the magistrate that Mr. Randle about the Stevens Avenue address, but instead only listed the address on Vera Cruz and described that address to the magistrate as Randle's "home."

The failure to note the conflicting address information highlights the lack of clarity about how Off. Hamilton established the Vera Cruz address as Mr. Randle's. Off. Hamilton stated that "RANDLE has 99** Vera Cruz Lane Brooklyn Park MN listed as his reported address until 03/08/2021." But listed where? Because that sentence follows immediately after a sentence saying that Mr. Randle was on supervised release, the implication is that somehow that information came from U.S. Probation, but the vagueness of the language makes it unclear. This lack of clarity might not matter if there were no other possible addresses besides Vera Cruz, but Off. Hamilton knew—having checked DVS records— that the Stevens Avenue address might be Mr. Randle's actual address. By omitting the Stevens Avenue address and leaving vague where the other address was "listed," Off. Hamilton was able to sidestep essential questions about Mr. Randle's ties to the Vera Cruz address.

In determining if "an affiant's statements were made with reckless disregard for the truth," the test "is whether, after viewing all the evidence, the affiant must have entertained

serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citing *United States v. Butler*, 594 F.3d 955, 961 (8th Cir.2010)). Here, Off. Hamilton was not relying on information obtained from another officer or a separate source of information; whether he bought crack cocaine and arrested Mr. Randle on more than one occasion is information about which he has direct, first-hand knowledge. Likewise, Off. Hamilton stated in the affidavit that he checked DVS records, so he would have seen that Mr. Randle's address was listed in multiple places as Stevens Avenue, not Vera Cruz. Any inaccuracy regarding these statements was a matter over which he had complete control.

The next step in the *Franks* analysis requires the Court to consider whether the warrant affidavit would demonstrate the necessary probable cause after removing its deliberate or reckless falsehoods and adding the omitted information. Probable cause is "a fluid concept turning on the assessment of probabilities in particular factual concepts" and as such is "not readily, or even usefully, reduced to a neat set of rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also Ornealas v. United States*, 517 U.S. 690, 697 (1996). To determine whether probable cause exists to support a search warrant, we must look at the "totality of the circumstances." *Id.*

Here, we have to make the following changes to the affidavit:

- Replace "~~Your affiant has had many interactions with RANDLE including arrests and undercover crack cocaine buys from RANDLE~~" with "Off. Hamilton arrested Mr. Randle once after an undercover buy in 2012."

- After "RANDLE has 99** Vera Cruz Lane Brooklyn Park, MN listed as his reported address until 03/08/2021," add "DVS vehicle and driver's license records show that RANDLE's address is 19** Stevens Avenue South, Minneapolis, MN."
- Change this sentence as marked: "Your Affiant and assisting Officers followed RANDLE as he drove from the City of Minneapolis to ~~his home located at~~ 99** Vera Cruz Lane, Brooklyn Park, MN."

After correcting the misstatements in the affidavit, it fails to establish probable cause for the requested searches. A single six-year-old contact is insufficient to prove probable cause when the issue of the identity of the alleged seller of crack cocaine was not otherwise sufficiently established in the search warrant affidavit. Off. Hamilton mentions unspecified "various investigative techniques" in support of his belief that the crack cocaine seller is named Johntez Randle. Although an alleged "confidential reliable informant" was employed to purchase crack cocaine, that CRI never identifies Mr. Randle by legal name, nickname, or phone number, or address. The affidavit includes no information from the CRI about Mr. Randle's appearance or other unique identifying information. Indeed, from the text of the affidavit, the only identifying information provided by the CRI to the Affiant is that "a male is selling crack cocaine in and around the city of Minneapolis MN." Although Off. Hamilton says the CRI identified a picture of Mr. Randle, the affidavit implies the identification procedure was a single-photo show-up, as opposed to a sequentially-presented photo lineup. Single-photo show-ups are often employed in an unreasonably suggestive manner.

Beyond the affidavit's problems with basic identifying information for the alleged crack cocaine seller, the remainder of the search warrant affidavit fails to meet probable cause. The lack of information about the alleged sale to the CRI leaves serious questions about its sufficiency to support a belief that contraband would be located in any of the places to be searched. The affidavit fails to mention anything about where the CRI made the claimed purchase – there is a vague suggestion that it occurred in Minneapolis – or when "within the past 72 hours," the purchase occurred. The affidavit does not tell us how much cocaine the CRI allegedly bought. Further, the affidavit makes a conclusory link between Mr. Randle and the address to be searched – it is "listed as his reported address." Other commonly-used law enforcement techniques used to demonstrate the reliability of the alleged sale to the CRI are not present in the affidavit. The affidavit does not indicate that there was any surveillance equipment – audio or video – used by the informant or surveillance officers. Another common investigative technique is to record any phone contact between the CRI and a drug dealer. Presumably, there should have been telephone contact (or preserved text messages) between Mr. Randle and the CRI before the alleged sale. But the affidavit mentions nothing of a recording, and does not even suggest that a phone call or text messages took place.

The main weakness in the search warrant affidavit—which Mr. Randle argues in his four-corners memorandum is fatal even without consideration of Off. Hamilton's mischaracterizations—is its attempt to draw a nexus between one alleged controlled buy and the address on Vera Cruz. One way Off. Hamilton did that was by overstating his own personal history with Mr. Randle. But Off. Hamilton could only tell the magistrate that the

Vera Cruz address was Mr. Randle's "home" by ignoring the DVS records he said he checked, which listed an address on Stevens Avenue as Mr. Randle's home under the Audi registration and under Mr. Randle's limited license and state ID. Knowing that there are multiple addresses raises important questions about which address was more reliable, about the source and reliability of each address, and which address was actually Mr. Randle's residence. Off. Hamilton ignored those questions and misled the magistrate by presenting the Vera Cruz address without reservation as Mr. Randle's "home," when he was aware of important reasons to doubt that it was.

Given the numerous material misrepresentations in the affidavit, it is not entitled to the standard presumption of good faith. *See United States v. Leon*, 468 U.S. 897, 922–23 (1984) ("[I]t is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued. Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.") Mr. Randle has made the necessary showing that Off. Hamilton deliberately or recklessly mischaracterized material facts in his affidavit, and that without those mischaracterizations the affidavit would not have established probable cause. He respectfully asks the Court to schedule a *Franks* hearing at its convenience.

Dated: October 7, 2019                    Respectfully submitted,

                                          S/Thomas H. Shiah
                                          Thomas H. Shiah #100365
                                          331 Second Ave South, Ste 705
                                          Minneapolis, Minnesota 55401
                                          (612) 338-0066

                                          ATTORNEY FOR DEFENDANT

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Criminal No. 19-50(1) (ADM/TNL)

---

United States of America,

      Plaintiff,      **AFFIDAVIT OF DENISE EVANS**

vs.

Johntez Leondis Randle,

      Defendant.

---

Denise Evans, being first duly sworn, states and alleges as follows:

1. My name is Denise Evans and I am the owner of Busy Bee delivery and was in October 2018.

2. In October, 2018, Mr. Johntez Leondis Randle, was an independent contractor working for Busy Bee conducting deliveries on a regular basis including on October 18, 2018.

3. As part of our normal process, delivery route details were reported by the driver and entered into an electronic device and the records have been maintained.

4. The route details for driver Mr. Johntez Leondis Randle on October 18, 2018, reflect that on that day, his routes started at 8:44 a.m. with several stops for pickups and deliveries occurring throughout the day and concluding at 4:18 p.m.

5. Those same records indicate that at 11:57 a.m. on October 18, 2018, he was preparing for his next delivery at the U.S. AutoForce Warehouse in Mendota Heights.

1

EXHIBIT 1

Subscribed and sworn to before me

on October __3__, 2019.

_____
Notary Public

KATHLEEN M PATE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2020

_____
Denise Evans

2

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA
### Criminal No. 19-50(1) (ADM/TNL)

United States of America,

                   Plaintiff,               **AFFIDAVIT IN SUPPORT OF**

vs.                                    **PRETRIAL MOTIONS**

Johntez Leondis Randle,

                   Defendant.

I, Johntez Leondus Randle, affiant herein, declare subject to the penalty of perjury this ___ day of October, 2019, the foregoing facts are true and correct to the best of my knowledge and belief and made in support of my recollection of all interactions with Officer Hamilton and in support of requesting the Court to order disclosure of relevant evidence prior to the suppression hearing utilized in the Search Warrant Application Affidavit prepared by Officer Hamilton, and supportive of my pretrial motions.

1.  Officer Hamilton stated in his affidavit for three search warrants issued on January 30, 2019, that he had multiple arrests and multiple drug sales with affiant. This is factually inaccurate as there has only been one controlled substance purchase from affiant by Officer Hamilton and one arrest in 2012.

2.  The October 18, 2018, controlled buy that Officer Hamilton referenced in his declaration in support of the statement that he was involved in multiple controlled purchases of cocaine from affiant was completely fabricated and false. I have never sold

or interacted with Officer Hamilton in a drug transaction other than the one controlled purchase in 2012.

3.   In further support of Officer Hamilton's statements that he was personally involved in multiple arrests of affiant brought forward evidence that I was present at a scene where arrests were made. Officer Hamilton is clear to say that I was not arrested at this time, and while I have no recollection of this event, because I was not arrested supports the fact that he misled the magistrate by indicating I had been arrested multiple times.

4.   The government has stated I am on a recorded drug transaction with Officer Efrem Hamilton which I know and have stated never occurred. I reiterate now at this time that there is no recording in existence with me interacting with Officer Hamilton from an October 18, 2018 controlled buy.

I declare the foregoing is true and correct under the subject of penalty of perjury this _4_ day of October, 2019.

Subscribed and sworn to before me

on October _4_, 2019.

Notary Public

Johntez Leondus Randle

JULIE A. DAVISON
Notary Public-Minnesota
My Commission Expires Jan 31, 2024

2

# MOTOR VEHICLE SEARCH

## SEARCH CRITERIA

Tag Number: WZ8###
Address: MN

GLBA: Legal Compliance
DPPA: Licensed Private Investigative or Security Services

## SEARCH RESULTS SUMMARY

| | | |
|---|---|---|
| 2008 Audi Q7 | WA1BY74L08D033464 | MN - WZ8679 |
| 2008 Audi Q7 | WA1BY74L08D033464 | MN - WZ8679 |

## SEARCH RESULTS

### 2008 Audi

Q7 - 3.6 QUATTRO PREM AWD - Silver

Registrant: JOHNTEZ LEONDUS RANDLE (Unknown)
VIN: WA1BY74L08D033464
Tag Number: MN - WZ8679
Source: Governmental



#### REGISTRANT

JOHNTEZ LEONDUS RANDLE (Unknown)
Possible SSN: ███████
19██ STEVENS AVE APT 4, MINNEAPOLIS, MN 55403-3849 HENNEPIN
Drivers License: #########
First Date: 01/17/2019
Latest Effective Date: 01/17/2019
Previous License Plate: MN - 967WVK
Last Reported: 02/2019

04/##/1996
Person ID: 04381363036G

License Plate: MN - WZ8679
Earliest Effective Date: 01/17/2019
Latest Expiration Date: 01/01/2020
First Reported: 02/2019
CURRENT

#### VEHICLE INFORMATION

Style: 4 Dr Wagon Sport Utility
State of Origin: MN

Type: PASSENGER CAR/LIGHT TRUCK

### 2008 Audi

Q7 - 3.6 QUATTRO PREM AWD - Silver

Registrant: JOHNTEZ LEONDUS RANDLE (Unknown)
VIN: WA1BY74L08D033464
Tag Number: MN - WZ8679
Source: Governmental



EXHIBIT 3

Limited Driver License Receipt



## Minnesota Limited Driver's License

**Effective 08/22/2018**
**Valid through 03/20/2019**







| Name | DOB | Endorsements |
|---|---|---|
| JOHNTEZ LEONDUS RANDLE | ███ | |

| Class D Status | Class | DL Issued | DL Expiration |
|---|---|---|---|
| LIMITED | I | | |

| Address | City | ZIP |
|---|---|---|
| 19█ STEVENS AVE S #4 | MINNEAPOLIS | 55403 |

| Eyes | Hgt | Weight | Gender |
|---|---|---|---|
| BRN | 506 | 180 | M |

**AMENDED ON 8/22/2018. CLASS D VEHICLE MUST BE EQUIPPED WITH IGNITION INTERLOCK. MAY DRIVE FROM TO WORK, WORK TO HOME AND AS REQUIRED FOR EMPLOYMENT WITH BUSY BEE DELIVERY LLC 56 COUNTY RD 226, SILT, CO MONDAY-FRIDAY 6AM-7AM AND 8AM-6PM AND SATURDAY 7:30AM-4PM. MAY DRIVE TO AND FROM IGNITION INTERLOCK VENDOR FOR DEVICE CALIBRATION AND SERVICING. LIMITED EXPIRES 03/20/2019. NN**

THIS DOCUMENT IS A RECEIPT AND IS NOT TO BE USED AS IDENTIFICATION AND IS NOT TO BE USED AS A STAND ALONE FORM OF IDENTIFICATION

This driver is only licensed to drive within the limitations described herein. A properly fastened seat belt shall be worn by the driver unless exempted by M.S. 169.686. Any limitation violation is punishable by law and loss of driving privilege. This license is valid if current Minnesota driving record so indicates and is in the possession of the driver.

In addition, I understand that any withdrawal of my privileges within two years of the expiration of this Limited License may result in non-issuance of a future Limited License per M.S. 7409.3600 sub 1d.

Signature required to validate

EXHIBIT 4

rg/dvsinfo/dsrecords/Include/Popups/LimitedLicens...