UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-50(1) (ADM/TNL)

_____

United States of America,

                Plaintiff,

vs.

Johntez Leondis Randle,

                Defendant.

_____

**DEFENDANT'S REPLY
TO GOVERNMENT'S
POST-HEARING RESPONSE**

Johntez Randle, by and through counsel, offers the following brief reply to the Government's Post-Hearing Response to Defendant's Pretrial Motions to Suppress (ECF Doc. 95).

## ARGUMENT

### I. THE CASELAW DOES NOT SUPPORT FINDING PROBABLE CAUSE.

The cases the government cites are not as strong as they are presented, because nowhere is there an affidavit as barebones as the one here. In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), a key case cited by the government, the question of nexus was not directly addressed. The decision sidestepped the nexus issue by moving directly to the question of good faith, "[a]ssuming, without deciding, that the affidavit failed to provide a sufficient nexus between Ross's residence and the drug conspiracy[.]" *Id.* at 1122. This was the context in which *Ross* examined Eighth Circuit precedents.

*Ross* interpreted those precedents to permit probable cause to search a house based on drug dealing outside that house if an affiant made one of two relevant showings: "we

1

have found probable cause to exist in cases [1] in which officers have stated that in their experience such an inference is appropriate and [2] in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *Id.* at 1123 (numbers added).

The government cites *United States v. Keele*, 589 F.3d 940 (8th Cir. 2009), which falls under the first class of cases, but which is easily distinguishable from Mr. Randle's case. There, officers responded to a car accident and found evidence in the defendant's car that he was involved in manufacturing and distributing methamphetamine. *See id*. at 944. The affiant, an experienced drug investigator, informed the magistrate that drug manufacturers often keep contraband in their homes. *See id*. It was this expert opinion that linked the evidence at the car to the defendant's residence and gave probable cause for the search. *See id*.

*Keele*, if anything, highlights how the affidavit here fell short. Off. Hamilton's affidavit simply described a controlled buy in vague terms, and then said that Mr. Randle drove to his "home" in Brooklyn Park. Off. Hamilton made no attempt to explain why the Brooklyn Park house could be expected to contain contraband under these circumstances.

Taking an example from the second class of cases, where the affidavit establishes "a continuous course of drug trafficking activity," *see Ross*, 487 F.3d at 1123, the government presents *United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000), as being particularly on point with the facts of this case. On the contrary, *Tellez* is easily distinguishable, and indeed like *Keele* it highlights what is missing in the affidavit here.

In *Tellez*, at the end of a controlled buy, the defendant told the informant that he had more drugs to sell and the informant should just call if he wanted to buy. *See id*. at 549. The defendant then drove straight home. *See id*. Later, the informant called the defendant and arranged another deal in a few hours. *See id*. The officers got a warrant. *See id*.

The *Tellez* panel found probable cause existed for the home in that case because the defendant said he had more drugs he could deliver on demand, and even after arranging a drug deal in the near future he didn't leave his residence. *See id*. The facts in that case supported a "fair probability" that the defendant had drugs or drug-related evidence in his home. *See id*.

Not so here. There was no evidence of other drugs. The evidence of the one transaction that allegedly occurred contained no details to permit an inference of other drugs or drug-related evidence. There isn't a clearly established course of drug trafficking activity that would establish probable cause regarding the Brooklyn Park house.

The government's argument attempts to do now what Off. Hamilton should have done from the start, which is to fill in the many significant factual gaps in this affidavit. The government restates the affidavit as "establish[ing] that Randle brought his drug proceeds – pre-marked, government-provided buy funds – straight to his residence (or a residence where he periodically stays) after completing the sale." (Govt. Response, ECF Doc. 95, at 12.) But that assertion is based more in speculation than in the actual words of the

affidavit. The affidavit doesn't say anything about Mr. Randle bringing anything into the house; it doesn't even explicitly say he went into the house.[1]

Nor is that all the reader of this affidavit is left to speculate about. We don't know how much buy money it supposedly was, nor do we have any idea how much crack Mr. Randle allegedly sold. Was it a half-gram of crack? More? Less? The affidavit doesn't provide any expert opinion about why contraband would be found in the house, and it doesn't provide enough basic facts to support an inference that there was a "continuous course of drug trafficking activity" sufficient to permit a search of the house. The government wants us to fill in the factual blanks with speculation and assumptions, but the facts are simply not in the affidavit.

The affidavit here fails to establish probable cause, and it fails so clearly that no reasonable officer could have relied on it in good faith. Mr. Randle respectfully requests that the evidence derived from the search warrants be suppressed.

**II.   OFF. HAMILTON'S MATERIAL MISSTATEMENTS AND OMISSIONS WERE NOT "TYPOS," BUT A CONSISTENT PATTERN INTENTIONALLY OR RECKLESSLY INTENDED TO MISLEAD THE MAGISTRATE INTO ISSUING THE WARRANT.**

The government attempts to portray Off. Hamilton's numerous misstatements as innocent negligence. The government portrays Off. Hamilton's misstatements of his history with Mr. Randle as "a typographical error or, at worst, a minor oversight[.]" (Govt Response, ECF Doc. 95, at 21.) But that is not what happened. The affidavit does

---

[1] Germane to the *Franks* issue, Off. Hamilton testified that he neither saw Mr. Randle bring the alleged buy money into the house nor ever found the money during any of his searches. (Mtns T. 89–90.)

not merely transform a singular "arrest" into the plural "arrests." The affidavit describes Off. Hamilton having "many interactions with Randle," emphasizing to the magistrate his history with and knowledge of Mr. Randle. Off. Hamilton was intentionally or at least recklessly trying to show an extensive relationship with Mr. Randle not backed up by the facts. It was not just a typo.

That it was neither a typo nor unintentional is reinforced by the error Off. Hamilton made in describing what he learned from U.S. Probation. He learned from U.S. Probation that Mr. Randle would be supervised until 2021, but he wrote an affidavit implying that Mr. Randle had listed the Brooklyn Park address as his until 2021. In what is ultimately a paper-thin affidavit, Off. Hamilton engaged in a consistent pattern of exaggerating the little information he had.

The cases discussed above, reviewing when a link may be drawn between drug dealing outside the home and the dealer's residence take for granted that the house to be searched is, in fact, the dealer's house. That fact is not so clear here, and it is important that Off. Hamilton knew that it wasn't clear. He had records from multiple checks showing that Mr. Randle listed his address in Minneapolis, not Brooklyn Park. Those records were from current state ID and vehicle records. But rather than reporting that Minneapolis address, Off. Hamilton concealed it from the magistrate. Given the caselaw, describing a location as a drug dealer's "home" has special significance in finding probable cause. Leaving out any reason to doubt that the Brooklyn Park address was Mr. Randle's "home" continued Off. Hamilton's established pattern of exaggerating the evidence.

The numerous material misstatements and omissions in this affidavit were not mere typos. They were deliberately or recklessly intended to mislead the magistrate into issuing the warrant, because without those misstatements and omissions filling in the factual gaps in the affidavit, the magistrate would not have found probable cause. Mr. Randle respectfully asks the Court to grant his motion for a *Franks* hearing.

Dated: November 26, 2019                 Respectfully submitted,

<u>S/Thomas H. Shiah</u>
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, Minnesota 55401
(612) 338-0066

Attorney for Defendant