# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

v.

Johntez Leondis Randle,

                Defendant.

Case No. 19-cr-50 (ADM/TNL)

**REPORT AND RECOMMENDATION**

Amber M. Brennan, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis MN 55415 (for the Government); and

Thomas H. Shiah, Law Offices of Thomas H. Shiah Ltd., 331 Second Avenue South, Suite 705, Minneapolis, MN 55401 (for Defendant Johntez Leondis Randle).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Johntez Leondis Randle's Pretrial Motion to Suppress Fruits of Unlawful Search and Seizure (ECF No. 21), Motion for Hearing Pursuant to *Franks v. Delaware* (ECF No. 22), Motion for Supplemental Discovery (ECF No. 39), and Second Motion for Supplemental Discovery (ECF No. 66). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Ann D. Montgomery, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Defendant is charged via indictment with possession with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (ECF No. 1). Defendant filed a motion seeking suppression of evidence seized following the search of a

home, his person, and a vehicle on January 30, 2019.[1] He also seeks an evidentiary hearing to examine statements made in support of the search warrant that law enforcement relied on to conduct those searches, as well as supplementary discovery related to that hearing.

The Government opposes each motion. A hearing was held on October 29, 2019. (ECF No. 85). The Court heard testimony from Officer Efrem Hamilton of the Minneapolis Police Department. The Court received into evidence: Government Exhibit 1 (application for search warrant and search warrant); Government Exhibit 2 (photographs); Government Exhibit 3 (photographs); Government Exhibit 4 (photographs); Government Exhibit 5 (photographs); Government Exhibit 6 (photograph); Government Exhibit 7 (photograph); Government Exhibit 8 (photograph); Defendant Exhibit 1 (photographs); and Defendant Exhibit 2 (lease agreement). Post-hearing briefing is complete, (ECF Nos. 90, 95, 96, 97, 100, and 101), and the motion is ripe for a determination by the Court. Based upon all the files, records, and proceedings herein, along with the testimony and evidence presented, the undersigned recommends that the motion to suppress be denied, the motion for a *Franks* hearing be denied in part and granted in part, and the motions for discovery be denied in part and granted in part.

## I.   FINDINGS OF FACT

On January 30, 2019, Officer Efrem Hamilton of the Minneapolis Police Department obtained a warrant to search a residence located on Vera Cruz Lane in Brooklyn Park, Minnesota ("the Residence"). (Gov. Ex. 1, p. 1-4). In the application for

---

[1] In addition to counsel's memoranda on this issue, Defendant also filed a pro se memorandum. (ECF No. 72). Because Defendant is represented by counsel, the Court will not consider this memorandum. *See United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994) (explaining that a represented party may not submit pro se motions and memoranda).

the warrant, Officer Hamilton stated that a confidential reliable informant ("CRI") had informed him that a person was selling crack cocaine in Minneapolis. (*Id.*, p. 2). Office Hamilton, using "various investigative techniques," identified that person as Defendant. (*Id.*). The officer reported in his affidavit that Defendant was "on U.S. Probation and on Supervised Release and "has [the Residence] listed as his reported address until 03/08/2021." (*Id.*). The officer further indicated in the application that he "had many interactions" with Defendant, "including arrests and undercover crack cocaine buys." (*Id.*). Officer Hamilton also reviewed Defendant's Minnesota identification and driving records, which indicated his license was cancelled. (*Id.*; ECF No. 45-1; Tr. 57:17-58:5).

No more than 72 hours before Officer Hamilton applied for the search warrant, he sent the CRI to "an area of Minneapolis" to purchase crack cocaine from Defendant. (Gov. Ex. 1, p. 2). The CRI indicated that Defendant arrived at the sale in a silver Audi sport utility vehicle and that Defendant sold the CRI crack cocaine. (*Id.*). Officer Hamilton provided the CRI a photograph of Defendant when the CRI returned from the controlled buy. (*Id.*). The CRI confirmed that Defendant was the person who sold him the drugs. (*Id.*). At some point thereafter, Officer Hamilton followed Defendant "as he drove from the City of Minneapolis to his home located at [the Residence]." (*Id.*, p. 3).

Though Officer Hamilton referred to the Residence as Defendant's "home," he did not include in his affidavit the fact that Defendant's state identification and driving record listed a different address for Defendant than the Residence. (ECF No. 45-1; Tr. 58:18-63:3). Nor did he review the Residence's lease agreement, which does not list Defendant as a tenant of the Residence. (Tr. 75:7-76:12; Def. Ex. 2). Officer Hamilton also clarified

at the hearing that he had only arrested Defendant on one previous occasion. (Tr. 22:18-22:19). Finally, the officer testified that when he followed Defendant to the Residence, the officer stayed there for approximately 30 minutes, during which time Defendant did not leave. (Tr. 86:13).

## II.   CONCLUSIONS OF LAW

### A.  Motion to Suppress

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, no warrant may issue for the search of a place unless that warrant is supported by probable cause. *Id.* "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir. 1999) (citation and internal quotation marks omitted).

Defendant argues the affidavit does not establish a "link between the probable cause presentation set forth in the affidavit and the particular location selected for police invasion." (ECF No. 90, p. 4). For probable cause to exist, the affidavit must establish a nexus between contraband or evidence of a crime and the place to be searched. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citing *United States v. Koelling*, 992 F.2d 817, 823 (8th Cir. 1993)). The  Fourth Amendment's nexus requirement is not substantial. *United States v. Rios-Uscanga*, No. 16-cr-316, 2017 WL 1534746, at *3 (D. Minn. Mar. 13, 2017), *report and recommendation adopted by* 2017 WL 1534745 (D.

Minn. Apr. 26, 2017). In assessing whether the nexus showing is satisfied, the Court "must make a 'common-sense decision' based on the totality of the circumstances set forth in the affidavit as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Here, the affidavit contains insufficient information to establish a fair probability that evidence of Defendant's alleged drug trafficking activities would be found at the Residence. Officer Hamilton, in his affidavit, states that Defendant "listed" the Residence as his "reported address" with U.S. Probation. Officer Hamilton also states that at some point, he followed Defendant "from the City of Minneapolis" to the Residence. (Gov. Ex. 1, p. 3). But the Eighth Circuit has "not adopted a per se rule . . . that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). Instead, the issuing judge may draw such an inference only if the officer states, "that in [his or her] experience such an inference is appropriate" and the supporting affidavit describes the "defendant's continuous course of drug trafficking activity." *Id.*; *see also United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (explaining that evidence was linked to the defendant's home through "the experienced opinion of [the agent] that drug manufacturers often keep contraband and proceeds at their personal residences"). Officer Hamilton did not state in his affidavit that such an inference was appropriate.

The Government argues that a nexus is established because the affidavit establishes that Officer Hamilton followed Defendant to the Residence directly after the controlled buy. The Government claims its position is largely supported by the Eighth Circuit's decision in *Tellez*. For two reasons, the Court does not find this argument persuasive.

First, the Court cannot conclude that the affidavit establishes that Officer Hamilton followed Defendant to the Residence immediately after the controlled buy. In his affidavit, Officer Hamilton states that he sent the CRI to a controlled buy with Defendant "in an area of Minneapolis" and that when the CRI "returned," the CRI confirmed that Defendant was the person the CRI bought crack cocaine from "while in an area of Minneapolis." (Ex. 1, p. 2). The officer then states that he and assisting officers followed Defendant "from the City of Minneapolis" to the Residence. (*Id.*). But the affidavit does not establish when law enforcement began to follow Defendant. Nor does it state that the "area of Minneapolis" where the controlled buy took place was the same location from where law enforcement began to follow Defendant. (*Id.*, pp. 2-3). In fact, because law enforcement consulted with the CRI, and showed a photograph of Defendant to the CRI after the controlled buy, it could be reasonable to infer, based on the four corners of the affidavit, that officers did not begin following Defendant immediately after the controlled buy took place. Accordingly, the Court cannot conclude the affidavit establishes that Defendant traveled directly to the Residence from the controlled buy. As a result, the affidavit does not establish that the surveillance of Defendant began immediately after the controlled buy was completed.[2]

---

[2] At the hearing, Officer Hamilton testified that he followed Defendant back to the Residence immediately after the controlled buy. (Tr. 85:9-85:15). But the Court cannot read the officer's testimony into the affidavit. *See United States v. O'Dell*, 766 F.3d 870, 875 (8th Cir. 2014) (limiting four corners review to information found in the affidavit).

Second, the facts of *Tellez* are distinguishable from this case. There, an informant arranged a controlled buy with Tellez. 217 F.3d at 549. At the buy, Tellez told the informant that he could provide the informant additional drugs. *Id*. Police then followed Tellez from the buy back to his house. The informant called Tellez and asked to purchase more narcotics. *Id*. Tellez was still at home and agreed to the sale. *Id*. Police then obtained a warrant permitting them to search Tellez's home if they stopped his vehicle on the way to the sale and located drugs in it. *Id*. Tellez then left his home, and police subsequently stopped his car and located drugs in it. *Id*. Police then executed the warrant for Tellez's residence. *Id*.

The differences between *Tellez* and this case are substantial. In *Tellez*, officers obtained a warrant only after they established that the defendant would proceed directly from his house to meet the informant. In addition, officers obtained a warrant that permitted the search of the house only if they first stopped Tellez's vehicle on the way to the sale and located drugs in it. As a result, officers were able to establish a direct link between the defendant's home and narcotics – it could be inferred that Tellez kept drugs at his home because officers located drugs in his car shortly after he left his home to meet the informant and complete a drug deal.

The affidavit here does not establish a similar link between Defendant and the Residence. Though reasonable to infer there were narcotics in Defendant's car when he met the CRI, the affidavit does not establish that Defendant traveled directly from the Residence to meet the CRI. In fact, as the Court noted above, it does not even establish that

Defendant returned to the Residence immediately after completing the controlled buy. Accordingly, *Tellez* does little to support the Government's argument.

The Government also argues that even if the search warrant lacks probable cause, the evidence recovered from the search is admissible under the good-faith exception to the warrant requirement. Under this exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). In general, there are four circumstances where the good-faith exception does not apply:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable;* and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (citation and internal quotation marks omitted) (emphasis in original). Defendant focuses on the third circumstance, arguing that the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citation omitted).[3] This Court does not agree.

---

[3] Defendant's motion for a *Franks* hearing implicates the first circumstance, which relates to false statements in the affidavit. The Court will address this issue when it considers the motion for a *Franks* hearing.

As the Court explained above, the affidavit contained sufficient facts to establish probable cause that Defendant was engaging in the sale of narcotics. The affidavit also contained sufficient information to establish that Defendant likely lived at the Residence. Thus, it was not entirely unreasonable for the officer to infer that "someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence." *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) (applying good-faith exception to warrant that lacked nexus between contraband and placed to be searched). This alone requires application of the good-faith exception.

In addition, application of the good-faith exception is appropriate when the flaw in the affidavit is a mere "technical legal deficiency." *United States v. Herron*, 215 F.3d 812, 814 (8th Cir. 2000). Here, the deficiency in the affidavit is the officer's failure to explain that, in his professional judgment, drug distributors often keep narcotics at their homes. *See Ross*, 487 F.3d at 1123. Such an omission constitutes a technical legal deficiency, so long as the affidavit establishes a connection between an individual and the drug trade and the targeted residence is specifically identified as that individual's home. *Carpenter*, 341 F.3d at 673; *see also Rios-Uscanga*, 2017 WL 1534746, at *6 ("By contrast, the Eighth Circuit has indicated that failing to specifically mention that narcotics are likely to be found in a suspect's home is a "technical legal deficiency" where the affidavit at issue contained an established connection between an individual and the drug trade and the targeted residence was specifically identified as that individual's home."). In this case, the affidavit established both a connection between Defendant and the drug trade and identified the

targeted residence as Defendant's home. For this reason as well, the Court recommends the good-faith exception apply.

Though the affidavit lacks probable cause to establish a nexus between Defendant's alleged criminal activity and the place to be searched, officers acted in good faith in relying on the warrant to search the Residence. Accordingly, the Court recommends the motion to suppress be denied.

### B. Motion for *Franks* Hearing

The Court will now consider Defendant's motion for a *Franks* hearing.[4] Under the United States Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). The Court may grant a *Franks* hearing only if the defendant makes a substantial preliminary showing on two issues. First, the defendant must show "that police added or omitted facts with intent to make the affidavit misleading, or in reckless disregard of whether the affidavit thereby becomes misleading." *United States v. Mathews*, No. 13-cr-79, 2013 WL 5781566, at *7 (D. Minn. Oct. 25, 2013), *aff'd*, 784 F.3d 1232 (8th Cir.

---

[4] There is some dispute in this district as to whether a motion for a *Franks* hearing is dispositive, which would require this Court to issue a report and recommendation to the District Judge, *see* Fed. R. Crim P. 59(b), or non-dispositive, which would permit this Court to resolve the matter by an order appealable to the District Judge. *See* Fed. R. Crim. P. 59(a); *compare United States v. Mays*, No. 19-cr-75, 2019 WL 4565636, at *4 (D. Minn. Sept. 20, 2019) (concluding motion for a *Franks* hearing is non-dispositive) *with United States v. McMillan*, No. 17-cr-290, 2018 WL 2383162, at *3 (D. Minn. May 25, 2018) (considering report and recommendation that recommended denial of motion to suppress and motion for a *Franks* hearing). The Court tends to agree that a motion for a *Franks* hearing is non-dispositive. In this case, however, it is more practical and efficient to issue a single report and recommendation on these issues because the motion for a *Franks* hearing and the related discovery motions are closely intertwined with the motion to suppress. *See Mays*, 2019 WL 4565636, at *4.

2015). Second, the defendant must show that the affidavit no longer establishes probable cause if the false information is excised or the omitted information is included. *Arnold*, 725 F.3d at 898.

Recklessness may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause." *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (quoting *United States v. Reivich*, 793 F.2d 957, 961-62 (8th Cir. 1986)); *see also United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (stating that an officer acts recklessly by withholding information that any "reasonable person would have known that this was the kind of thing the judge would wish to know"). Recklessness may also be inferred, when after viewing all the evidence, it is clear that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citation omitted).

The requirement of a substantial preliminary showing "is not lightly met," *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (citation omitted). It requires more than allegations; a defendant satisfies this standard only by making an offer of proof, through affidavits or other similarly reliable evidence. *Franks*, 438 U.S. at 171. Here, Defendant argues the affidavit contains misrepresentations and omissions that, if corrected, would affect the existence of probable cause related to: (1) his alleged criminal activity and (2) the nexus between Defendant's alleged criminal activity and the place to be searched. The Court will consider each category in turn.

**1.  Omissions and Misrepresentations Related to Alleged Criminal Activity**

Defendant first argues that Officer Hamilton misled the issuing judge by stating that the officer had "many" contacts with Randle, including undercover buys and arrests. Defendant argues that the record shows that Officer Hamilton made only a single undercover buy from Defendant in 2012, and that the officer arrested him shortly thereafter. Defendant has offered two affidavits in support of his argument, which relate to a controlled buy alleged to have occurred in 2018. (ECF No. 71, pp. 12-15).

The Court need not decide whether Officer Hamilton intentionally or recklessly misrepresented the nature of his contacts with Defendant. Even assuming this to be the case, and omitting the challenged statement from the affidavit entirely, Defendant has failed to show that the affidavit would lack probable cause if the misrepresentation was corrected. The affidavit would still establish that Officer Hamilton obtained a tip from a CRI that a person was selling crack cocaine in and around Minneapolis; that Officer Hamilton identified Defendant as the person selling crack cocaine; that the CRI conducted a controlled buy from Defendant no more than 72 hours before application of the warrant; and that the CRI later identified Defendant as the person who sold him narcotics. This alone would be sufficient to establish probable cause that Defendant was engaged in criminal activity. *See United States v. Gabrio,* 295 F.3d 880, 883 (8th Cir. 2002) (holding that an informant's tip provides probable cause if corroborated by independent evidence); *United States v. Warren*, 42 F.3d 647, 652 (D.C. Cir. 1994) (concluding probable cause established when police corroborate a reliable tip about drug activity with a single controlled buy).

Defendant argues the most recent controlled buy is insufficient to establish probable cause. He claims the affidavit contains little information about where the buy took place and the amount of cocaine sold. He also questions the CRI's identification of Defendant following the buy, asserting that it was likely the result of a single-photo show-up.

In assessing whether the affidavit supports probable cause, the affidavit must be judged on the "adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Here, the affidavit asserts that Officer Hamilton briefed the CRI on the location of the controlled buy and provided him funds to make that buy. The affidavit further asserts that the CRI went to that location, purchased narcotics, turned those narcotics over, and then identified Defendant as the person who sold him drugs. Law enforcement field screened the narcotics, which tested positive for crack cocaine. Thus, while the affidavit lacks certain details about the sale, the information that it does contain is more than sufficient to establish probable cause that Defendant was engaged in the sale of narcotics.

The fact that Officer Hamilton may have shown the CRI a single photograph of Defendant following the sale does not defeat probable cause. Defendant suggests that single-photo show-ups "are often employed in an unreasonably suggestive manner." (ECF No. 90, p. 20). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir. 1993). Here, the officer indicated that the CRI had been used several times and found him to be honest and trustworthy. (Gov. Ex. 1, p. 2). Officer Hamilton conducted his own investigation of the CRI's initial report of drug

trafficking before sending the CRI to the controlled buy. (*Id.*). The CRI then confirmed that Defendant was the person who sold him drugs. "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *Williams*, 10 F.3d at 593. In this case, the CRI had both a proven track record and provided information that was corroborated by other investigatory techniques. For this reason as well, the most recent controlled buy supports the existence of probable cause.

Furthermore, on the record before the Court, the identification procedure used by the officer was reliable enough to justify including in the affidavit. Officer Hamilton stated that the CRI had: (1) participated in several controlled buys; (2) observed Defendant selling crack cocaine previously; and (3) ample opportunity to observe Defendant during the controlled buy. *Cf. United States v. Bissonette*, 164 F.3d 1143, 1145-46 (8th Cir. 1999) (rejecting argument that pretrial identification procedure was impermissibly suggestive in part because the informant had time to observe the defendant and had participated in several controlled buys). Defendant has offered no reason why the Court should find that the CRI was incapable of making a reliable identification. For all of these reasons, the Court recommends that the motion for a *Franks* hearing be denied with regard to Officer Hamilton's alleged misrepresentations about his previous contacts with Defendant.

### 2. Omissions and Misrepresentations Related to Nexus with the Residence

Defendant also argues the affidavit contains several misrepresentations and omissions that are relevant to establishing a nexus between the alleged criminal activity

and the Residence. First, Defendant claims the officer should have included the fact that Defendant's state driving and identification records indicate that Defendant lives at a different address than the Residence. Second, Defendant claims that Officer Hamilton should have included the fact that Defendant was not a party to the Residence's lease agreement.  Third, Defendant claims the officer misrepresented Defendant's connection to the Residence by stating in the affidavit that Defendant had listed the Residence "as his reported address until 03/08/2021." (Gov. Ex. 1, p. 2). Finally, Defendant claims the officer should have included the fact that when he followed Defendant to the Residence, the officer stayed there for only 30 minutes before departing.

In support of these arguments, Defendant relies on his state driving and identification records (ECF No. 45-1), the officer's testimony at the hearing, and the lease agreement for the Residence. (Def. Ex. 2). Defendant contends that through these omissions and misrepresentations, Officer Hamilton misled the issuing judge by characterizing the Residence as Defendant's home.

The Court will first consider whether Officer Hamilton should have included in the affidavit the fact that Defendant's state driving and identification records list a different address than the Residence. The parties do not dispute that Officer Hamilton was aware of those records. Indeed, Officer Hamilton cited to those records in his affidavit. The parties also do not dispute that Officer Hamilton omitted that information from the affidavit.

This information would clearly have been critical to the issuing judge. Important to the Court's analysis of the issues here, the affidavit contained little information to suggest that Defendant lived at the Residence. In fact, other than a conclusory statement from

Officer Hamilton that he followed Defendant "to his home," the only evidence establishing that Defendant lived at the Residence was information obtained from U.S. Probation. Had the officer included the omitted information in the affidavit, the issuing judge's analysis would have changed substantially. The affidavit would have contained conflicting information about Defendant's address from two different government agencies. The issuing judge would have to consider whether, given this contradiction, Defendant's otherwise minor contacts with the Residence were enough to justify the search. Under these circumstances, the issuing judge may have questioned whether probable cause still existed to search the Residence. *See United States v. Davis*, No. 06-cr-20325, 2007 WL 541825, at *5 (E.D. Mich. Feb. 16, 2007) ("If the Court were to adopt the Government's reasoning, law enforcement would be free to search any home that a suspected defendant visited-based on unverified allegations that he resided there, or uncorroborated observations of a car allegedly driven by the suspect, parked in the driveway."). At a minimum, this change may have caused the issuing judge to ask the officer to investigate the matter further.

When seeking a search warrant for a home whose nexus with criminal activity is based almost exclusively on the fact that police believe an alleged drug trafficker lives there, it is clearly critical that official state records indicate that the suspect lives at a different address. The judge issuing this warrant would want to know this information, given the scant details in the affidavit establishing that Defendant actually lived at the Residence. Under these circumstances, Defendant has made a substantial preliminary showing that Officer Hamilton recklessly excluded the address listed on Defendant's state

driving and identification records from the affidavit. Defendant has satisfied the first prong of *Franks* with regard to the state address information.

Because the Court has concluded that Defendant has satisfied the first prong of *Franks*, the Court must recommend that a *Franks* hearing be granted with regard to this omission. The Government cannot rely on the good-faith exception to save a warrant whose nexus with criminal activity is based upon an intentional or reckless omission or misrepresentation. *See Jacobs*, 986 F.2d at 1235. Furthermore, as the Court explained previously, though the search warrant lacked a nexus between Defendant's alleged criminal activity and the Residence, officers acted in good faith in assuming that a nexus existed because the affidavit established a connection between Defendant and the drug trade and identified the Residence as Defendant's home. *See Carpenter*, 341 F.3d at 673. But had the officer included the conflicting address information, the affidavit would have placed in question whether the Residence was actually Defendant's residence. Had the officer included the omitted information in the affidavit, the Court might have been forced to conclude that it was entirely unreasonable for the officer to assume that a nexus existed between Defendant's alleged criminal activity and the Residence. A *Franks* hearing is therefore justified on this issue.

The Court will next consider whether the omission of lease information from the Residence justifies a hearing. The officer's omission of the lease was unintentional, as nothing in the record establishes the officer was ever aware of the agreement. Thus, the only way Defendant can satisfy his burden under the first prong of *Franks* is to make a

substantial preliminary showing that the officer acted recklessly in failing to obtain the lease agreement before submitting the affidavit for review.

Defendant has failed to meet this burden. Though the officer was presented with conflicting information regarding Defendant's address, Defendant cites to no authority that shows the officer was required to review the lease agreement. A defendant cannot make a substantial preliminary showing regarding the first prong of *Franks* simply by alleging the officer could have obtained additional information had he or she investigated a matter in a different way. *Cf. Allen*, 211 F.3d at 975 (stating that adequacy of warrant must not be based on what a critic might say should have been included).  Rather, the defendant must show the officer was under some obligation to investigate the matter in the way the defendant suggests, or that the only reasonable way the officer could have investigated the matter was to do so in the manner proposed by the defendant. That is not the case here. There are many other paths the officer could have pursued once presented with the conflicting address information. He could have submitted the affidavit with the state identification and driving records included for review. He could have conducted additional surveillance of Defendant and the Residence. He could have also interviewed witnesses who might have information about who lives at the Residence. He could also have followed up with U.S. Probation. In fact, checking the lease agreement may not have been the most effective way for the officer to confirm who lives at the Residence, as there is no guarantee that agreement would accurately reflect who actually lived there.

As a result, the officer's failure to check the lease agreement establishes (at most) that he acted negligently. The negligent omission of information from an affidavit does not

justify a *Franks* hearing. *United States v. Finley*, 612 F.3d 998, 1003 (8th Cir. 2010). The Court therefore declines to recommend that a *Franks* hearing be held regarding the omission of the lease information from the affidavit.

Defendant next challenges the following statements in the affidavit, "[Defendant] is currently on U.S. Probation and on Supervised Release. [Defendant] has [the Residence] listed as his reported address until 03/08/2021." Defendant argues those statements mischaracterize the record because, as the officer testified, though information obtained from U.S. Probation established that Defendant was on probation or supervised release until March 2021, it did not establish that Defendant was required to live at the Residence until that date.[5]

Officer Hamilton's characterization of the Residence as Defendant's reported address until March 2021 was admittedly imprecise. The affidavit would have been more precise if it stated that Defendant "is on U.S. Probation until March 2021 and has listed [the Residence] as his address." But nothing in the record suggests the officer drafted the challenged statement the way he did in order to mislead the issuing judge. Nor can the Court conclude that he acted recklessly, as this minor correction would not have been clearly critical to the probable cause finding. *See Williams*, 477 F.3d at 559.  Even with this alteration, the issuing judge would still be aware that Defendant was on probation at the time the officer sought the warrant; Defendant had listed the Residence as his address with U.S. Probation; and Defendant had visited the Residence some time following the

---

[5] There was no testimony or evidence presented about any probation or supervised release conditions that Defendant was subject to, or whether those conditions would require him to tell a probation officer that he had moved.

controlled buy. As a result, Defendant fails to meet his burden of a substantial preliminary showing with regard to the first prong of *Franks* with respect to these statements.

Finally, Defendant argues that Officer Hamilton should have included in the affidavit the fact that the officer stayed at the Residence for only 30 minutes after following Defendant there from Minneapolis, during which time Defendant did not leave. The Court disagrees. The inclusion of this information would have no impact on the probable cause finding. Officer Hamilton would still be able to state truthfully that he followed Defendant to the Residence. If anything, the fact the officer stayed there for some time and did not observe Defendant leave might only have strengthened the case for probable cause. Thus, Defendant fails to satisfy either prong of *Franks* on this issue as well.

### 3.  Post-Hearing Submissions

Nearly 30 days after the Court took the matter under advisement, Defendant submitted a supplemental memorandum of law (ECF No. 97), asking that the Court also grant a *Franks* hearing because Officer Hamilton misrepresented the number of convictions Defendant had in the affidavit. The Government objects to this memorandum as untimely. Alternatively, the Government argues the alleged misrepresentations do not entitle Defendant to a *Franks* hearing.

The Federal Rules of Criminal Procedure permit the Court to set a deadline for parties to make pretrial motions. Fed. R. Crim. P. 12(c)(1). The Court may not consider untimely motions unless the moving party shows good cause. Fed. R. Crim. P. 12(c)(3). In this case, Defendant does not dispute that he filed his supplemental memorandum after the

deadline for pretrial motions passed. Instead, he argues that he intended only to supplement the record in his original motion for a *Franks* hearing, not file a new motion.

As explained above, a defendant seeking a *Franks* hearing must first make a substantial preliminary showing that the officer added or omitted facts with intent to make the affidavit misleading, or in reckless disregard of whether the affidavit thereby becomes misleading. *Mathews*, 2013 WL 5781566, at *7. The defendant must then demonstrate that the affidavit would no longer establish probable cause if the misleading statements were excluded or the omitted information included. *Arnold*, 725 F.3d at 898. Under this analysis, each statement or omission that Defendant identifies can therefore be a separate and independent claim for a *Franks* hearing. Thus, when a defendant challenges new statements or omissions in an affidavit, the defendant is essentially making a new request for a *Franks* hearing. For this reason, Defendant must show good cause as to why the Court should consider his untimely supplemental memorandum.

Defendant has not done so. Defendant has been aware of the affidavit and the statements it contained regarding his criminal history since at least the time that he filed his motion for a *Franks* hearing. But he has provided no reason why he did not challenge the criminal history statements until early January, several months after he first moved for relief. Accordingly, the Court recommends that, to the extent Defendant seeks a *Franks* hearing for the reasons identified in his supplemental memorandum of law (ECF No. 97), the motion be denied as untimely pursuant to Federal Rule of Criminal Procedure 12(c).

### C. Motion for *Franks* Discovery

Defendant has also filed two supplemental discovery motions, seeking information that he claims is relevant to his motion for a *Franks* hearing. (ECF Nos. 39 and 66). Defendant previously requested the Court decide those motions before it decided the motion for a *Franks* hearing. The Court denied that request, explaining that the fact a defendant requested a *Franks* hearing did not permit the defendant to obtain additional discovery, unless authorized by some other statute, rule of criminal procedure, or other entitlement. (ECF No. 70, p. 4) (citing *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000)). The Court noted, however, that it would consider whether Defendant was entitled to supplemental discovery motions if it decided Defendant was entitled to a *Franks* hearing. Having recommended that Defendant receive a *Franks* hearing regarding the omission of the address listed on his state identification card and his driving records, the Court will now consider what discovery Defendant should be entitled to in preparation for that hearing.

In his most recent memorandum, Defendant summarized the discovery he sought for the *Franks* hearing as follows:

1. Police reports regarding the controlled buy;

2. Recordings of audio or video surveillance of alleged controlled buy;

3. Date and time of the controlled buy;

4. Specific location of the controlled buy;

5. Description of any suspect vehicles involved in the controlled buy;

6. Records regarding the buy funds used during the controlled
   buy;

7. Phone number Mr. Randle was alleged to have used to
   arrange the controlled buy;

8. Any evidence that controlled buy funds were later located
   by police;

9. Any laboratory reports regarding testing of drugs purchased
   in the controlled buy;

10. Any documents demonstrating chain of custody of drugs
    purchased in the controlled buy;

11. Names of officers who conducted surveillance of Mr.
    Randle after the alleged controlled buy; and

12. All CRI logs from the alleged controlled buy.

(ECF No. 90, pp. 21-22). With the exception of categories 1 and 11, none of these requests

relate to Officer Hamilton's omission of the conflicting address information from the

affidavit or more generally the nexus between the suspected criminal activity and the

Residence. Instead, they relate to other portions of Defendant's motion for a *Franks*

hearing, such as Officer Hamilton's characterization of the number of contacts he had with

Defendant. Because the Court recommended the motion for a *Franks* hearing be denied as

to those issues, the Court recommends the motions to compel be denied with respect to

categories 2 through 10 and 12.

Categories 1 and 11, however, might provide information that is relevant to the

nexus between Defendant's alleged criminal activity and the Residence. Thus, the Court

recommends the Government be ordered to disclose any police reports that discuss the

steps that law enforcement took to confirm Defendant's address, as well as identify any officers who conducted surveillance of Defendant following the 2019 controlled buy, as those officers may have information regarding the extent of Defendant's contacts with the Residence following the controlled buy. The Court therefore recommends that Defendant's motions for supplemental discovery (ECF Nos. 39 and 66) be granted in part and denied in part.

## III.   RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (ECF No. 21) be **DENIED** with regard to the four corners of the affidavit;

2. Defendant's Motion for Hearing Pursuant to *Franks v. Delaware* (ECF No. 22) be **GRANTED IN PART AND DENIED IN PART** as follows:

   a. A *Franks* hearing be held before the undersigned as to the omission from the affidavit of information obtained by Officer Hamilton regarding Defendant's address from driving records and state identification cards; and

   b. The motion be denied in all other respects; and

[continued on next page]

3.  Defendant's Motion for Supplemental Discovery (ECF No. 39) and Defendant's Second Motion for Supplemental Discovery (ECF No. 66) be **GRANTED IN PART AND DENIED IN PART** and that Government turn over, no later than 14 days before the *Franks* hearing, all police reports that reference steps that law enforcement took to verify Defendant's address and the identity of all officers who conducted surveillance of Defendant following the 2019 controlled buy.


Date: January 27, 2020                         *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *United States v. Randle*
                                                Case No. 19-cr-50 (ADM/TNL)

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.