UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-50(1) (ADM/TNL)

_____

United States of America,

                Plaintiff,

vs.

Johntez Leondis Randle,

                Defendant.

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

_____

Defendant Johntez Leondis Randle, by and through counsel, hereby objects under Local Rule 72.2.(b)(1) to the Report and Recommendation of United States Magistrate Judge Tony N. Leung (ECF No. 103 [R&R]), filed January 28, 2020, recommending denial of Mr. Randle's Pretrial Motion to Suppress Fruits of Unlawful Search and Seizure (ECF No. 21) and partial denial of his Motion for Hearing Pursuant to *Franks v. Delaware* (ECF No. 22), Motion for Supplemental Discovery (ECF No. 39), and Second Motion for Supplemental Discovery (ECF No. 66). In support of his objections, Mr. Randle now offers the following:

# ARGUMENT

## I. THE GOOD-FAITH EXCEPTION DOES NOT SAVE THE SEARCH WARRANT.

Mr. Randle agrees with the R&R's finding that the search warrant affidavit in this matter failed to establish probable cause to believe that evidence of a crime would be found in the Brooklyn Park address. (*See* R&R 10.) However, he objects to the R&R's recommendation that the lack of probable cause should be excused under the good-faith exception to the exclusionary rule. (*See id.*)

In this case, good faith cannot save the search because, "[w]ithout any nexus between the criminal activity and the residence, reliance upon this warrant would be completely unreliable and would place it beyond the good faith exception." *United States v. Kemper,* 375 F. Supp. 2d 551, 554 (E.D. Ky. 2005) (in a murder case, stale information did not support probable cause and the good faith exception to the exclusionary rule was not applicable). Further, when an "affidavit[] simply do[es] not say very much about [the defendant] or his residence," officers cannot reasonably rely on the issuing judge's probable cause determination. *United States v. Herron,* 215 F.3d 812, 814 (8th Cir. 2000).

In *Herron,* a search warrant was issued for Herron's residence, following his alleged involvement in a relative's marijuana growing operation. While the supporting affidavits included his prior marijuana convictions and his family relationship to the marijuana growers, "the affidavits [made] only two passing references to the Herron residence" and only three references to Herron. *Id.* at 815. In determining that suppression was warranted in spite of the good faith exception, the Eighth Circuit ruled that "the lack of probable

cause in the affidavits would have been apparent to reasonable officers." *Id.* Moreover, the *Herron* panel emphasized that, "[i]n reaching this conclusion we are mindful that the subject of this search—a person's home—enjoys special protection under the Fourth Amendment." *Id.*

The R&R relies on *United States v. Carpenter*, 341 F.3d 666 (8th Cir. 2003), in recommending that good faith excuse the lack of nexus in the warrant affidavit, *see* R&R at 9, but that reliance is misplaced. In *Carpenter*, an informant told officers that a woman had more than a personal-use amount of methamphetamine. *See* 341 F.3d at 667. The informant didn't know the woman's last name or address, and he didn't know where the woman was storing the methamphetamine. *See id*. The officers found records for a woman who appeared to match the informant's description and sought a warrant to search her home. *See id*. The search in reliance on that warrant discovered 443.9 grams of methamphetamine. *See id*. at 668.

In reliance on *Leon*, *Carpenter* sidestepped the issue of whether nexus was established to search the house and went directly to the question of whether the officer could have reasonably believed there was nexus to the house. *See id*. at 669. *Carpenter* noted that, "[a]s a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence." *Id*. at 671. *Carpenter* therefore ruled that the good-faith exception saved the search, whether or not nexus was actually established. *See id*.

But here that inference was not permissible, because the affidavit is so devoid of any pertinent facts to support such an inference. The affidavit does not allege that Mr. Randle

3

was in possession of any narcotics beyond what was allegedly sold to the informant. The affidavit does not say what amount of crack Mr. Randle allegedly sold or what amount of money Mr. Randle allegedly received.

In *Carpenter*, the officer knew and averred that the amount of methamphetamine held by the subject of the search was significant, more than a personal-use amount, and so the inference that it would be stored at home was reasonable enough to invoke the good-faith exception. *See id.* at 671. But *Carpenter* was equally clear in saying that the court "do[es] not endorse such an inference without a factual basis to form the nexus between the residence and the drugs." *Id.* (citing *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) and quoting in a parenthetical: "We agree, of course, that there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue.").

Here, as the R&R has recognized, the affidavit clearly failed to establish a nexus between contraband and the Brooklyn Park house. As the R&R recognizes, the affidavit does not establish that Mr. Randle traveled from the Brooklyn Park address to the alleged buy, nor does it establish that he traveled directly to the address after the alleged buy. (*See* R&R 7–8.) There is no timeline that would support an inference. Nor is there anything in the affidavit that established a basis to believe that there was "valuable contraband," as in *Carpenter*, of the type that an officer could reasonably believe might be stored in a person's house, because the affidavit gave no information about the alleged quantities of drugs or amounts of money that were exchanged.

4

Off. Hamilton was a trained, experienced officer, one who should have been able to recognize this affidavit's obvious deficiencies. Mr. Randle objects to the R&R and asks the Court to rule that the good-faith exception does not save this warrant because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citation omitted).

## II. MR. RANDLE OBJECTS TO THE LIMITATIONS THE R&R RECOMMENDS PLACING ON THE *FRANKS* HEARING AND OBJECTS FURTHER TO THE LIMITED GRANT OF DISCOVERY.

If the Court agrees and rejects the R&R's recommendation that the warrant's failure to establish a nexus between alleged criminal conduct and the Brooklyn Park residence should be excused under the good-faith exception, then the matter is closed. But in the alternative, Mr. Randle also objects to some of the R&R's recommendations regarding a proposed *Franks* hearing.

The R&R recommends that Mr. Randle be granted a *Franks* hearing, and that his motion for discovery be granted in part, limited to discovery related to investigation regarding Mr. Randle's address and the Brooklyn Park address. (*See* R&R 10.) The R&R recommends that the *Franks* hearing be limited to issue of conflicting information regarding Mr. Randle's address, and recommends denial of Mr. Randle's motions for discovery as they relate to the October 2018 and January 2019 controlled buys. (*See id.* at 24.) Mr. Randle objects to the limitations placed on the *Franks* hearing, and he objects to the R&R's recommendation that he be denied discovery regarding the controlled buys.

5

Mr. Randle first objects that Off. Hamilton's misstatements regarding his prior history with Mr. Randle should be considered an independent basis for a *Franks* hearing. The R&R recommends denying Mr. Randle's motion in this regard. But the affidavit in this case is extraordinarily thin in establishing probable cause. Off. Hamilton's statements regarding Mr. Randle's history act as corroboration for the informant's story, and so to the extent that Off. Hamilton exaggerated Mr. Randle's past, it was critical in convincing the magistrate that probable cause existed.

Similarly, Mr. Randle objects to the R&R's recommendation that Off. Hamilton's misstatements regarding his criminal history should not be considered as part of the *Franks* hearing. The R&R claims that each statement challenged in a search warrant should be considered a separate *Franks* motion, and so recommends denial of consideration of this issue because it was a late motion. (*See* R&R 21.) The R&R cites no precedent establishing this principle, and Mr. Randle objects to this limitation being placed on the *Franks* hearing.

Under the R&R's analysis, Mr. Randle has made a sufficient showing that a *Franks* hearing is necessary, even without consideration of Off. Hamilton's misstatements of Mr. Randle's criminal history. During that hearing, Mr. Randle should be allowed to question Off. Hamilton regarding all of his misstatements, because they are all relevant to establishing the officer's state of mind.

In order to receive a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), Mr. Randle was required to make a substantial preliminary showing on two prongs: 1) that Off. Hamilton's search warrant affidavit contained false information or omitted relevant

information, deliberately or with reckless disregard for the truth; and 2) that the falsehoods or omissions were necessary to establishing probable cause. *See United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). As the R&R recognizes, Mr. Randle has met that difficult burden.

But it is important to remember that Mr. Randle was not required to show "clear proof" at this pre-hearing stage. *See United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007). At the *Franks* hearing, he will still bear the burden of proving these elements by a preponderance of the evidence. *See id*. at 557. There is no basis for limiting the inquiry as the R&R suggests.

The R&R recommends that a *Franks* hearing should be held because Mr. Randle has made a substantial showing that Off. Hamilton omitted critical information in his possession calling into question whether Mr. Randle actually lived at the Brooklyn Park address that was described as his "home" in the warrant affidavit. But at the *Franks* hearing, the relevant inquiry will be whether Off. Hamilton acted deliberately or with reckless disregard for the truth when he included false information and omitted critical information.

There is simply no basis in law to limit the *Franks* inquiry before the hearing has even occurred. Although the R&R identifies the omission of the address information as crucial to the establishment of probable cause and therefore a reason to have a *Franks* hearing, when that hearing takes place Mr. Randle should be allowed to explore Off. Hamilton's other misstatements and omissions because they are directly relevant to the inquiry regarding his state of mind in omitting the address information, and they also may play an

important role in assessing the affidavit's probable cause after more information comes to light. This includes the misstatements in the affidavit regarding Mr. Randle's criminal history.

Fourth Amendment probable-cause inquiries must consider the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 233 (1983). These inquiries are so fact-intensive that the Eighth Circuit has suggested that each individual case is effectively unique. *See Reinholz*, 245 F.3d at 776 (quoting *United States v. Button*, 653 F.3d 319, 327 (8th Cir. 1981), in a *Franks* analysis for the principle that "[b]ecause of the kaleidoscopic myriad that goes into the probable cause mix seldom does a decision in one case handily dispose of the next"). At the *Franks* hearing, Mr. Randle will have the burden of showing both that there was no probable cause without correcting the false information and including the omitted information, and that Off. Hamilton acted deliberately or recklessly in drafting the affidavit. Mr. Randle needs to have the opportunity to explore the affidavit in the totality of its circumstances so that he may meet the burden placed on him. Contrary to the R&R, this should include the misstatements regarding Mr. Randle's criminal history, whether or not those misstatements were raised in his initial filings.

Also, there will not likely be direct evidence of Off. Hamilton's state of mind regarding the misstatements and omissions in his affidavit, as intent is generally "proven by circumstantial evidence and frequently cannot be proven in any other way." *United States v. Lanier*, 838 F.2d 281, 283 (8th Cir. 1988) (per curiam). So even if this Court should agree with the R&R that Off. Hamilton's misstatements regarding his history with

Mr. Randle and regarding Mr. Randle's criminal history are not relevant to the question of probable cause, those issues are still relevant to Off. Hamilton's mens rea in omitting the conflicting address information.

In a similar vein, Mr. Randle objects to the partial denial of his discovery motions. Off. Hamilton's credibility is in serious doubt, which is demonstrated here by the exceptionally rare recommendation of a *Franks* hearing. Mr. Randle submitted affidavits supporting his contention that the October 2018 controlled buy that Off. Hamilton supposedly conducted with Mr. Randle did not occur. He has moved for discovery related to that buy and the January 2019 buy that was the specific basis for the warrant, to be either disclosed to him or else reviewed in camera for greater secrecy, but the R&R has recommended that this motion be denied. This information is crucial in establishing Off. Hamilton's state of mind as he omitted the critical information regarding Mr. Randle's conflicting addresses, and Mr. Randle respectfully asks the Court to grant his motion and order the government to disclose the requested information related to the October 2018 and January 2019 controlled buys.

To the extent that the government has information tending to cast doubt on or contradict the information set forth in Hamilton's search warrant affidavits, that information must be produced. The due process requirements of the Fifth Amendment mandate the disclosure of evidence that is material to Mr. Randle's defense, including material that is relevant to witness credibility and impeachment. The government should be ordered to disclose the requested information regarding both controlled buys.

## CONCLUSION

Mr. Randle respectfully asks this Court to reject the R&R and grant his motion to suppress the evidence discovered during the search of the Brooklyn Park residence, because the search warrant affidavit was so clearly lacking in indicia of probable cause that no reasonable officer would have believed it permitted a search of the residence.

In the alternative, Mr. Randle asks this Court to reject the limitations the R&R recommends being placed on the *Franks* hearing, and further asks that his motions for discovery be granted in their entirety.

Dated: February 21, 2020          Respectfully submitted,

S/Thomas H. Shiah
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, Minnesota 55401
(612) 338-0066

Attorney for Defendant