UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 19-00050 ADM/TNL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHNTEZ LEONDIS RANDLE,

    Defendant.

**GOVERNMENT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DKT. 103)**

## I.    INTRODUCTION

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Amber M. Brennan, Assistant United States Attorney, respectfully submits the following objections to the Report and Recommendation issued by the Honorable Tony N. Leung, United States Magistrate Judge, on January 28, 2020 (Dkt. 103, hereinafter the "R&R").

The Government has two objections to the R&R. Both objections relate to the Magistrate Judge's findings regarding the sufficiency of the search warrant for residence at Vera Cruz Lane in Brooklyn Park, MN (hereinafter the "Vera Cruz Lane" residence). The warrant and supporting affidavit was previously filed with the Court in this case at Docket Number 28-1, and it was also received as Exhibit 1 during the motions hearing on October 29, 2019. (Motions Hearing Transcript ("MHT") 19). The Government's objections are as follows:

> **OBJECTION 1:** The Government objects to the finding that the search warrant affidavit does not establish sufficient nexus between Randle's alleged drug trafficking activities and the premises that were searched. (R&R 5).

**OBJECTION 2:** The Government objects to the finding that Officer Hamilton should have included in the search warrant affidavit the fact that Randle's state identification card and vehicle registration records listed a different address than the residence that was searched. (R&R 15). The Government further objects to the recommendation, which stemmed from that finding, that Randle is entitled to a Franks hearing as to the omission from the affidavit of information regarding Randle's address.

The Government submits to the Court that the parties conducted extensive pre and post-hearing briefing on Randle's pretrial motions. Rather than reiterate all of its former submissions again, the Government respectfully refers to Court to its Post-Hearing Response to Defendant's Pretrial Motions to Suppress (Dkt. 95, "Govt's Posthrg Mem") for a fulsome recitation of its position along with the law and facts relevant thereto.

## II. ARGUMENT

**1. The Search Warrant Affidavit Establishes a Fair Probability That Evidence of Randle's Drug Trafficking Activities Would be Found at the Vera Cruz Lane Residence**

The R&R concluded that while the search warrant did establish probable cause that Randle was engaged in drug trafficking, it did not establish a sufficient nexus between his alleged drug trafficking activities and the Vera Cruz Lane residence. As support for its argument that the warrant did establish the nexus, the government relied on the fact that officers followed Randle directly from a controlled purchase – in which he sold suspected crack cocaine to a confidential informant – to the Vera Cruz Lane residence. However, the Magistrate Judge did not read the affidavit as having establishing those facts. As the R&R

states: "the Court cannot conclude that the affidavit establishes that Officer Hamilton followed Defendant to the Residence immediately after the controlled buy." (R&R 6).

The affidavit is fairly short and the government urges this Court to review it in its entirety when considering these objections. In the interest of brevity, however, below is the most pertinent section of the warrant affidavit for purposes of this question:

> CRI contacted RANDLE and a short time later RANDLE arrived inside of MN/LP ▬▬▬, a silver 2008 Audi Q7 Sports Utility Vehicle which is registered to him in the DMV/DVS records. CRI made contact with RANDLE who was the front seat passenger. RANDLE had an unknown individual driving. RANDLE is known through this investigation to utilize a driver because he has a Minnesota Identification only that is in a status of Cancelled Inimical to Public Safety (IPS).[1]
>
> RANDLE sold a quantity of suspected crack cocaine that later field tested positive to CRI in exchange for the pre-recorded buy funds. CRI returned and presented to your Affiant an amount of suspected crack cocaine that they purchased. Your affiant showed the CRI a color photo of RANDLE and they confirmed that RANDLE is the person that they bought the field tested positive crack cocaine while in an area of Minneapolis.
>
> Your Affiant and assisting Officers followed RANDLE as he drove from the City of Minneapolis to his home located at ▬▬▬ Vera Cruz Lane, Brooklyn Park, MN.
>
> Later, your Affiant field screened [the suspected crack cocaine … ]

(Dkt. 28-1).

To be sure, the Magistrate Judge's interpretation of the warrant affidavit – as not clearly stating that officers followed Randle directly from the controlled purchase to the

---

[1] Randle's vehicle registration and his Minnesota ID card, which Officer Hamilton was clearly aware of at the time he wrote the warrant, listed a different address for Randle than the Vera Cruz Lane residence. These facts are relevant to the Government's second objection.

3

residence at Vera Cruz Lane, is a fair one, and the Government does not challenge that such an interpretation is reasonable. However, the pertinent question here is whether a reasonable factfinder could have also read the affidavit another way, and interpreted it as stating that officers did follow Randle directly to his residence from the controlled buy. The Government avers that it can.

As the issuing magistrate was likely aware, controlled purchases of narcotics are typically conducted under law enforcement surveillance, and Officer Hamilton's description of the controlled purchase, which included a description of the vehicle in which Randle arrived, the fact that Randle was a front seat passenger of the vehicle, would signal that officers were conducting direct surveillance of the transaction. The paragraphs describing the transaction and follow up interaction with the CRI, and then following Randle to Vera Cruz Lane residence, are followed by a paragraph indicating a break in time, in that Officer Hamilton's field testing of the suspected crack cocaine was conducted "later." The absence of a break in time between the preceding paragraphs is significant.

Based on the totality of the circumstances and the structure of this affidavit, the issuing magistrate could have – and likely did – read the affidavit as indicating that the officers observed the controlled purchase and then maintained surveillance, following Randle directly from the controlled purchase to Vera Cruz Lane. As the Government argued in its post-hearing memorandum, this is an important fact in the analysis of whether there was a nexus between Randle's drug trafficking activities and the Vera Cruz Lane residence. (*See* Govt's Post-Hrg. Mem, Dkt. 95, at 12-14).

### 2. Information About Other Possible Addresses for Randle Was Not "Clearly Critical" to the Finding of Probable Cause

The parties agree that Officer Hamilton was aware that the addresses listed on Randle's state identification card and his vehicle registration was different than the Vera Cruz Lane address at the time he executed the search warrant affidavit for the Vera Cruz Lane address. The parties also agree that Officer Hamilton referenced the Vera Cruz Lane address as Randle's "home" in the search warrant affidavit because Randle had reported that address as his residence to the United States Probation Office, which was supervising him at that time. After stating that Randle is *currently* on U.S. Probation and Supervised Release, the affidavit states that he "listed" the Vera Cruz Lane residence as his "reported" address until 2021. Plainly, the officer conveyed that Randle had reported to the United States Probation Office that he lived at the Vera Cruz Lane residence. The information Randle presumably self-reported to his probation officer about his address was corroborated when he drove (or more precisely rode, as a passenger in his own car) to that residence after selling crack cocaine to a CRI. This information, as set forth in the affidavit, is more than sufficient to show that Randle was living at the Vera Cruz Lane residence or, at the very least, that he was periodically staying there, and that the residence is a place he would feel comfortable unwinding after completing a drug sale.

As set forth in the Government's post-hearing memorandum, Eighth Circuit case law indicates that nexus to search an individual's home can exist where the person is closely tied to narcotics trafficking, even without specific evidence that the residence is

involved. *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007), citing *United States v. Wiley,* 475 F.3d 908, 912–13 (7th Cir.2007) (noting that "[a]lthough we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence," the Court has found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit described a defendant's pattern of drug trafficking activity); <u>United States v. Keele</u>, 589 F.3d 940, 944 (8th Cir. 2009) (finding probable cause to search defendant's residence where evidence of drug manufacturing and distribution was recovered from the scene of car accident in which defendant was involved, and the experienced agent who wrote the search warrant affidavit opined that drug manufacturers often keep contraband and proceeds at their personal residences). See also *United States v. Taylor*, No. CRIM. 15-91 JNE/LIB, 2015 WL 4992443, at *8-9 (D. Minn. Aug. 20, 2015) (The fact that neither the informant nor the investigating officers directly observed contraband or criminal activity at the defendant's residence does not prevent a finding that there was a nexus between defendant's drug activities and the residence, even where, as here, the affidavit did not include a statement indicating that, in the affiant's experience, drug dealers often keep records or other evidence of drug transactions in their homes, and noting that while such a statement from the officer could strengthen probable cause, "there is no case law saying that such a statement is required.")

    Indeed, in *Ross*, the Court recognized that "many of our sister circuits have used language that comes even closer to a per se inference." *Id.*, citing *United States v.*

6

*Nolan,* 199 F.3d 1180, 1183 (10th Cir.1999) (citing other circuit decisions recognizing an inference); *United States v. McClellan,* 165 F.3d 535, 546 (7th Cir.1999) (noting that a magistrate may reasonably infer that evidence is likely to be found where drug dealers live); *United States v. Feliz,* 182 F.3d 82, 88 (1st Cir.1999) (stating that it could reasonably be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there); *United States v. Thomas,* 989 F.2d 1252, 1254–55 (D.C.Cir.1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can support a finding of probable cause for a search of the dealer's home); *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986) (stating that a magistrate may reasonably infer that evidence is likely found where drug dealers live); and *United States v. Hodge,* 246 F.3d 301, 306 (3rd Cir.2001) (finding it reasonable to search an experienced and repeat dealer's home).

The affidavit establishes that Randle brought his drug proceeds – pre-marked, government-provided buy funds – to the residence that he had reported as his home to the United States Probation Office, who was supervising him at the time of this incident. A judge deciding whether to issue a search warrant is allowed to make reasonable inferences in determining whether probable cause exists. *United States v. Summage,* 481 F.3d 1075, 1078 (8th Cir.2007) (citing *United States v. Thompson,* 210 F.3d 855, 860 (8th Cir.2000)). Here, considering the evidence and making reasonable inferences therefrom, there is probable cause for the issuing judge to determine that Randle returned home to secure his drug proceeds, his excess product, packaging materials, or other evidence of the crime he had committed just minutes earlier. The affidavit establishes that Randle went to his

7

residence with pre-marked buy funds the CRI had just given him. In this circumstance, there was probable cause that officers would find drug proceeds, and other evidence of drug dealing, in his residence.

Officer Hamilton's affidavit showed a connection between Randle and the Vera Cruz Lane address, to include that he reported it to his probation officer and traveled directly there following a drug deal. Whether Randle may have had other residences where he lived, occasionally stayed, or received his mail, is not relevant to whether contraband might be found at the Vera Cruz Lane address. Indeed, the Court is likely aware that individuals who are involved in the criminal justice system often cannot report where they actually live because they are not able to be on leases due to their criminal histories. Additionally, individuals who have unstable lives often have addresses they use to receive their legal mail and/or other important documents. It is unrealistic, and unnecessary, to require officers who are seeking a warrant based on probable cause related to a certain address, to also disclose any alternate address they may have identified related to the suspect being investigated. Officer Hamilton properly focused on the address where he had established a recent connection to drug dealing activity. He did not mention other addresses with which Randle may have been associated, and did not attempt to seek warrants for those addresses.

Based on the foregoing, the Government respectfully objects to the R&Rs conclusion that Officer Hamilton's failure to notify the issuing magistrate that Randle's Minnesota Identification Card and vehicle registration record listed an address other than

the Vera Cruz Lane address as his residence would have been material to the determination of probable cause to search the Vera Cruz Lane address.

Dated: February 21, 2020

        Respectfully Submitted,

        ERICA H. MacDONALD
        United States Attorney

        **s/Amber M. Brennan**
        BY:  AMBER M. BRENNAN
        Assistant U.S. Attorney
        Attorney ID No. 0285961