UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-50(1) (ADM/TNL)

_____

United States of America,

      Plaintiff,   **DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

vs.

Johntez Leondis Randle,

      Defendant.
_
_____

 Defendant Johntez Leondis Randle, by and through counsel, hereby offers the following response to the government's objections to the Report and Recommendation of United States Magistrate Judge Tony N. Leung, filed October 31, 2019. (*See* ECF Doc. 109 (R&R).) The government makes two objections. First, the government objects to the finding that the search warrant affidavit provided no nexus to the Brooklyn Park address. Second, the government objects to the finding that Off. Hamilton's omission of the conflicting address information he discovered for Mr. Randle was critical to the finding of probable cause and merits a *Franks* hearing. In support of his argument that the Court should overrule these objections, Mr. Randle now offers the following:

1

# ARGUMENT

I. **THE AFFIDAVIT DID NOT ESTABLISH PROBABLE CAUSE TO BELIEVE THAT EVIDENCE OF A CRIME WOULD BE FOUND IN THE BROOKLYN PARK ADDRESS.**

Mr. Randle has already argued, in his objections to the R&R, that the affidavit so clearly failed to establish a nexus to the address that it should not be afforded the benefit of good faith, *see* Defendant's Objections to R&R, ECF 108, at 2–5, so in large part he will rely on those arguments here to ask that the Court reject the government's first objection.

The government candidly acknowledges that the R&R's finding that the affidavit doesn't actually establish that officers followed Mr. Randle from the alleged buy directly back to the Brooklyn Park address is a "fair" and "reasonable" one. The government then suggests that there was another fair and reasonable interpretation of the affidavit in which it *does* imply that the officers followed Mr. Randle directly from the alleged buy to Brooklyn Park.

But such an inference doesn't rest on what the affidavit actually says. The government attempts to fill in the holes in the affidavit with speculation, arguing that the issuing magistrate "was likely aware [that] controlled purchases of narcotics are typically conducted under law enforcement surveillance," and therefore "Officer Hamilton's description of the controlled purchase, which included a description of the vehicle in which Randle arrived, the fact that Randle was a front seat passenger of the vehicle, would signal that officers were conducting direct surveillance of the transaction." (Govt Obj. at 4.) But the affidavit makes no claim that officers directly observed the alleged

transaction. It seems at least as likely that an experienced officer would know that documenting for the magistrate that he or other officers were eyewitnesses to the alleged transaction would only strengthen probable cause, and so Off. Hamilton's failure to do so supports the inference that the officers did not observe the alleged transaction and were relying exclusively on the CRI's report.

Other parts of the affidavit suggest it would be unreasonable to imagine the officers were present for the alleged buy. As the R&R notes, *see* R&R at 6, Off. Hamilton says he "***sent*** CRI to meet with Randle, that he "gave the CRI an amount of pre-recorded buy funds and ***directed them to go to an area of Minneapolis*** and meet with RANDLE." Then, according to the affidavit, "CRI *returned* and presented to your Affiant an amount of suspected crack cocaine that they purchased." Off. Hamilton says he then presented the CRI with a photo of Mr. Randle so the CRI could identify him as the man who allegedly sold him crack. It is simply unthinkable that Off. Hamilton would just forget to mention that he or other officers were also present for the alleged buy and could also identify Mr. Randle. Contrary to the government's assertions, the affidavit does not support a reasonable inference that the officers directly observed the alleged buy.

It is also significant that the paragraph describing the officers following Mr. Randle "from the City of Minneapolis to his home" is its own separate paragraph, suggesting a break from what came before. And again, Off. Hamilton's failure to directly say that the officers followed Mr. Randle from the alleged buy, instead vaguely saying they followed him from "the City of Minneapolis," strongly suggests that they did not follow him from the alleged buy. If they did, *why not just say so?* Moreover, since Off. Hamilton and the

3

other officers were not present for the alleged buy, there must have been some gap of time before the officers made contact. The affidavit gives no way of estimating how long that gap was.

The R&R was correct to find that the affidavit failed to establish that the officers followed Mr. Randle directly from the alleged buy to the Brooklyn Park address, and Mr. Randle asks the Court to reject the government's objection. And, as the government all but acknowledges, *see* Govt Objections at 4, this finding breaks the slender thread that purportedly tied the Brooklyn Park address to criminal activity. As the R&R correctly concluded, the affidavit here failed to establish a sufficient nexus to search the house.

## II. THE OMISSION OF MR. RANDLE'S OTHER ADDRESS WAS CLEARLY CRITICAL TO THE FINDING OF PROBABLE CAUSE.

As has been discussed at length, the affidavit in this case provided at best a tenuous link between alleged criminal activity and the Brooklyn Park address. The only solidity to that link comes from Off. Hamilton's assertion that the Brooklyn Park address was Mr. Randle's "home," based on Mr. Randle reporting that address to U.S. Probation.

As a preliminary matter, Mr. Randle endorses the government's assertion that "[t]he parties agree that Officer Hamilton was aware that the addresses listed on Randle's state identification card and his vehicle registration was different than the Vera Cruz Lane address at the time he executed the search warrant affidavit for the Vera Cruz Lane address." (Govt Resp. at 5.) However, Mr. Randle cannot endorse the government's assertion that "[t]he parties also agree that Officer Hamilton referenced the Vera Cruz Lane address as Randle's 'home' in the search warrant affidavit because Randle had

4

reported that address as his residence to the United States Probation Office[.]" (*Id.*) While Mr. Randle agrees that this is where Off. Hamilton said the address came from, Off. Hamilton's motivations and justification for telling the magistrate it was Mr. Randle's "home"—when, as the parties agree, he was fully aware there compelling evidence from two state databases that it was *not* Mr. Randle's home—are at the very heart of this dispute.

Unsurprisingly, the caselaw the government cites to support its nexus argument, *see* Govt Objections at 5–7, is dependent on the home searched actually being the suspect's residence, making the question of Mr. Randle's residence critically important to the finding of probable cause. The Eighth Circuit has never adopted a per se rule that there will always be probable cause to search the residences of suspected drug dealers. As the R&R notes, the Eighth Circuit has noted they have found probable cause "in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit ***also*** described a defendant's continuous course of drug trafficking activity." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) (citations omitted and emphasis added).

Here, Off. Hamilton did not support nexus with any relevant training or experience, and there was no continuous course of drug activity. There was, at most, one controlled buy, after which at some point Mr. Randle was seen—once—driving to a house in Brooklyn Park. The government goes so far as to claim that the magistrate could have reasonably concluded Mr. Randle "returned ***home*** to secure his drug proceeds, his excess product, packaging materials, or other evidence of the crime he had committed ***just***

*minutes earlier*," a speculative assertion not at all justified by the affidavit, the available evidence, or any reasonable inference. (Govt Resp. at 7 (emphasis added).)

Recklessness in the *Franks* context may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause." *See United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007). Officers act with reckless disregard when they knowingly withhold information that "[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993).

The withheld information here was exactly the kind of thing a judge would wish to know. The affidavit, after all, was remarkably thin. It has no course of conduct, but rather one alleged buy for an unknown amount of crack. The officers did not observe this alleged buy. After an unknown gap in time, the officers followed Mr. Randle to the Brooklyn Park address. The affidavit doesn't even specifically say that Mr. Randle went inside. It's unknown how long he stayed there.

What the magistrate did have was Off. Hamilton's assertion that this Brooklyn Park address was Mr. Randle's "home," which was at best misleading given that Off. Hamilton knew that Mr. Randle had registered a Minneapolis address in two official state databases. Off. Hamilton did not merely withhold from the magistrate his knowledge that Mr. Randle had conflicting addresses registered in official state databases, but also he chose to exaggerate what he did have by describing the Brooklyn Park address to the magistrate as Mr. Randle's "home."

The R&R correctly concluded that the omission of the conflicting address information was clearly critical to the finding of probable cause, and further that a *Franks* hearing is necessary to determine whether Off. Hamilton acted deliberately or with reckless disregard for the truth when he omitted this information. *Cf. United States v. Jacobs*, 986 F.2d 1231, 1234–35 (8th Cir. 1993) (finding a *Franks* violation where the affiant exaggerated the little probable cause he had and omitted conflicting information). Mr. Randle respectfully asks the Court to reject the government's objections and adopt the R&R's recommendation.

Dated: March 6, 2020                    Respectfully submitted,


S/Thomas H. Shiah
Thomas H. Shiah #100365
331 Second Ave South, Ste 705
Minneapolis, Minnesota 55401
(612) 338-0066

Attorney for Defendant