# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Johntez Leondis Randle,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 19-50 ADM/TNL

_____

Amber M. Brennan, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Thomas H. Shiah, Law Offices of Thomas H. Shiah Ltd., Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Johntez Leondis Randle's ("Randle") Objection [Docket No. 108] and Plaintiff United States of America's (the "Government") Objection [Docket No. 109] to Magistrate Judge Tony N. Leung's January 28, 2020 Report and Recommendation [Docket No. 103] ("R&R").[1] In the R&R, Judge Leung recommends denying Randle's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 21], denying in part and granting in part Randle's Motion for Hearing Pursuant to Franks v. Delaware [Docket No. 22], and denying in part and granting in part Randle's Motions for Supplemental Discovery [Docket Nos. 39, 66]. After a de

---

[1] Randle has also filed a pro se letter objecting to the R&R. See Letter [Docket No. 112]. Because Randle is represented by counsel, the Court will not consider this letter. See United States v. Agofsky, 20 F.3d 866, 872 (8th Cir. 1994) (holding the district court's refusal to rule on pro se filings by represented defendants was not erroneous because "[t]here is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel").

novo review of the record, and for the reasons stated below, the Government's Objection is overruled in part and sustained in part, and Randle's Objection is overruled.

## II. BACKGROUND[2]

Randle is charged with one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B). Indictment [Docket No. 1]. He moves to suppress evidence seized on January 30, 2019 when officers executed state search warrants for a residence on Vera Cruz Lane in Brooklyn Park, Minnesota (the "Residence"), Randle's person, and an Audi belonging to him. He also seeks an evidentiary hearing to examine statements made in support of the search warrants, as well as discovery related to that hearing.

The search warrant applications included a January 30, 2019 affidavit by Minneapolis Police Officer Efrem Hamilton ("Officer Hamilton"). The affidavit provides in pertinent part:

> Your Affiant received information from a Confidential Reliable Informant (CRI) that a male is selling crack cocaine in and around the city of Minneapolis MN. Through various investigative techniques, your affiant positively identified the male as Johntez Leondus RANDLE   . Your affiant has had many interactions with RANDLE including arrests and undercover crack cocaine buys from RANDLE. RANDLE is currently on U.S. Probation and on Supervised Release. RANDLE has    Vera Cruz Lane Brooklyn Park, MN listed as his reported address until 03/08/21.
>
> Within the past 72 hours, your affiant sent CRI to meet with RANDLE to purchase crack cocaine an illegal narcotic. CRI has been used numerous times in the past and found to be honest and trustworthy. Information from CRI has led to arrest and convictions in State and Federal Courts. Prior to making the controlled buy of narcotics, CRI was searched and found to have no contraband or money on their person. I made a photocopy of CRT buy funds prior to giving it to the CRI. I gave the CRI an amount of pre-recorded buy funds and directed them to go to an area of Minneapolis and meet with RANDLE.

---

[2] The factual background of this case is more fully set forth in the R&R and is incorporated by reference.

> CRI contacted RANDLE and a short time later RANDLE arrived inside of MN/LP: ▓, a silver 2008 Audi Q7 Sports Utility Vehicle which is registered to him in the DMV/DVS records. CRI made contact with RANDLE who was the front seat passenger. RANDLE had an unknown individual driving. RANDLE is known through this investigation to utilize a driver because he has a Minnesota Identification only that is in a status of Cancelled Inimical to Public Safety (IPS).
>
> RANDLE sold a quantity of suspected crack cocaine that later field tested positive to CRI in exchange for the pre-recorded buy funds. CRI returned and presented to your Affiant an amount of suspected crack cocaine that they purchased. Your affiant showed the CRI a color photo of RANDLE and they confirmed that RANDLE is the person that they bought the field tested positive crack cocaine while in an area of Minneapolis.
>
> Your Affiant and assisting Officers followed RANDLE as he drove from the City of Minneapolis to his home located at ▓ Vera Cruz Lane, Brooklyn Park, MN.
>
> Later, your Affiant field screened a small amount of the purchased suspected crack cocaine, and it field screened positive for cocaine. The purchased crack cocaine was later inventoried at the Minneapolis Property and Evidence Unit as evidence.

Gov't Resp. Opp'n Mot. Franks Hr'g [Docket No. 28, Attach. 1] at 2–3.

Although the affidavit refers to the Residence as Randle's "home," Randle's DVS records and Minnesota Identification show his address as being on Stephenson Avenue in Minneapolis, not Vera Cruz Lane in Brooklyn Park. See Gov't Resp. [Docket No. 45, Attach. 1] at 1, 7. Officer Hamilton was aware of the Stephenson Avenue address information but did not include it in the affidavit. Tr. [Docket No. 88] at 57:17–63:3. Additionally, though the affidavit states that Officer Hamilton "has had many interactions with RANDLE including arrests and undercover crack cocaine buys," Officer Hamilton had arrested Randle on only one prior occasion. Id. at 21:18–22:20.

At the evidentiary hearing on Randle's suppression motion, Officer Hamilton testified that immediately after the controlled buy, Randle was followed back to the Residence. Tr. 85:12–15. Officers stayed outside the Residence for 30 minutes, during which time Randle did

not leave. Id. at 85:24–86:13.

Randle moves to suppress evidence found during the search of his Residence. He argues the affidavit in support of the search warrant failed to establish probable cause that evidence of a crime would be found in the Residence, and that the lack of probable cause was not excused under the good-faith exception to the warrant requirement. Randle also moves for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), to examine statements Officer Hamilton made in support of the search warrants. Randle further moves for supplemental discovery that he claims is relevant to his motion for a Franks hearing.

On January 28, 2020, Judge Leung issued a thorough R&R that recommends denying the motion to suppress, denying in part and granting in part the motion for a Franks hearing, and denying in part and granting in part the motions for supplemental discovery. Randle and the Government have both filed objections to the R&R. For the reasons discussed below, the Court adopts the recommendation to deny the motion to suppress, but holds that a Franks hearing and Franks-related discovery are not appropriate in this factual context.

### III. DISCUSSION

**A. Motion to Suppress**

A district judge may refer a defendant's motion to suppress evidence to a magistrate judge for recommendation. Fed. R. Crim. P. 59(b)(1). The district judge must make an independent, de novo determination of those portions of the report and recommendation to which a party objects. Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1); D. Minn. L.R. 72.2(b)(3).

In recommending denial of the motion to suppress, the R&R found that the search warrant affidavit lacked probable cause to establish a nexus between Randle's alleged criminal

activity and the Residence, but that the evidence is still admissible under the good-faith doctrine in United States v. Leon, 468 U.S. 897 (1984).

### 1. Government's Objection

The Government objects to the R&R's conclusion that the search warrant affidavit does not establish a sufficient nexus between Randle's alleged drug trafficking activities and the Residence. "A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched." United States v. Skarda, 845 F.3d 370, 376 (8th Cir. 2016) (quotations omitted). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." United States v. Tellez, 217 F.3d 547, 549 (8th Cir. 2000). "When the issuing judge relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. O'Dell, 766 F.3d 870, 874 (8th Cir. 2014). "[G]reat deference" is accorded "to the judicial officer's initial, on-the-scene determination that probable cause has been established." United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010); United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995).

The R&R found that although the affidavit included sufficient facts to establish probable cause that Randle was engaging in the sale of narcotics and that he likely lived at the Residence, the affidavit lacked sufficient information to establish a fair probability that evidence of Randle's alleged drug trafficking activities would be found at the Residence. Specifically, the affidavit did not include a statement by Officer Hamilton that, in his professional judgment, drug traffickers often keep narcotics at their homes. R&R at 5 (citing United States v. Ross, 487 F.3d

1120, 1123 (8th Cir. 2007) ("Although we have not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, we have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity.").

The R&R further found that the affidavit did not establish a nexus between Randle's alleged drug activity and the Residence because the affidavit did not state that Officer Hamilton followed Randle to the Residence directly after the controlled buy. The R&R observed that the affidavit does not specify when the officers began to follow Randle, nor does it state whether the "area of Minneapolis" where the CRI was "sent" and the controlled buy occurred was the same location as the place in the "City of Minneapolis" from which law enforcement began to follow Randle. R&R at 6. The R&R correctly noted that although Officer Hamilton testified at the suppression hearing that he followed Randle back to the Residence immediately after the controlled buy, this information cannot be read into the affidavit. R&R at 6 n.2.

The Government objects, arguing that a reasonable factfinder could interpret the affidavit as stating that the officers observed the controlled buy and then followed Randle directly from the controlled purchase to the Residence. In advocating for this interpretation, the Government contends that the issuing judge was likely aware that controlled purchases of narcotics are typically conducted under law enforcement surveillance. The Government also contends that Officer Hamilton's description of the controlled purchase—including the license plate of the vehicle Randle arrived in and his position as a front seat passenger—suggests that the officers

6

were conducting direct surveillance of the transaction. The Government further argues that the structure of the affidavit shows the officers followed Randle directly to his residence from the controlled buy. The Government relies on the paragraph in the affidavit that begins, "Later, your Affiant field screened a small amount of the purchased suspected crack cocaine . . . ." This paragraph is preceded by three paragraphs describing the controlled buy, the officers' follow-up interaction with the CRI, and the officers' following Randle from the City of Minneapolis to the Residence. The Government contends that the paragraph beginning with the word "Later" signals a break in time, and would have likely caused the issuing judge to interpret the affidavit as indicating that the officers observed the controlled buy and then maintained their surveillance by following Randle directly from the controlled buy to the Residence.

Whether the affidavit permits a reasonable inference that the officers followed Randle directly from the controlled buy to the Residence is a close call. Although the Government's arguments are logical, the inferential leap is a stretch given the complete absence of any information affirmatively stating that the officers observed the controlled buy and followed Randle directly from the buy to the Residence. Such information is crucial to establishing a nexus between the contraband and the Residence. The information in the affidavit comes close to, but does not quite reach establishing probable cause to search the Residence.

Because the R&R correctly concluded that the affidavit fails to provide a sufficient nexus between Randle's alleged drug trafficking activities and the Residence, the Government's Objection on this issue is overruled. However, whether or not this search warrant affidavit sufficiently articulates probable cause, the <u>Leon</u> good-faith exception clearly applies to uphold the admissibility of the evidence seized.

7

**2. Randle's Objection**

Randle objects to the R&R's conclusion that the evidence is admissible under the Leon good-faith exception to the warrant requirement. "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007). There are four circumstances under which the good-faith exception will not apply:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

Id. at 632–33 (quoting Leon, 468 U.S. at 923). Randle focuses on the third circumstance, arguing "the good-faith exception does not save this warrant because the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Randle Obj. [Docket No. 108] at 5 (quoting Leon, 468 U.S. at 923).[3]

The R&R concluded the good-faith exception applies for two reasons. First, the affidavit included sufficient facts to establish probable cause that Randle was engaging in the sale of narcotics and that he likely lived at the Residence. Given these facts, the R&R determined that it was not entirely unreasonable for an officer to infer that Randle would store narcotics at the

---

[3] Randle's motion for a Franks hearing relates to the first circumstance, which pertains to intentional or reckless misrepresentations. This issue is addressed in the Court's consideration of Randle's motion for a Franks hearing.

8

Residence. The R&R relied on United States v. Carpenter, which applied the good-faith exception upon determining that "it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence." 341 F.3d 666, 671 (8th Cir. 2003). The R&R's second reason for finding the good-faith exception to be appropriate was that the flaw in the affidavit—Officer Hamilton's failure to explain that, in his professional judgment, drug distributors often keep narcotics at their homes—was a mere technical difficulty. R&R at 9.

Randle objects, arguing the R&R's reliance on Carpenter is misplaced. Randle contends Carptenter is distinguishable because the affidavit in that case included information that the defendant was carrying more than a personal-use amount of narcotics, whereas here the affidavit does not specify the amount of crack Randle allegedly sold or the amount of money he allegedly received. Randle thus argues the affidavit lacks a reasonable basis for believing that there was "valuable contraband" of the type that an officer could reasonably believe might be stored in a person's house. The Court disagrees. The affidavit includes information that Randle was engaging in drug trafficking. Specifically, a reliable CRI informed Officer Hamilton that a male was selling drugs in and around Minneapolis, Officer Hamilton used investigative techniques to identify the male as Randle, and Randle sold crack cocaine to the CRI during a controlled buy. This information allows for a reasonable inference that Randle was trafficking drugs and might be storing "valuable contraband" in his home. The good-faith exception applies, and Randle's Objection is overruled.

## B. Motion for Franks Hearing

Randle has moved for a Franks hearing, arguing that Officer Hamilton intentionally or

9

recklessly misrepresented his past contacts with Randle and omitted conflicting address information for Randle. Randle contends these misrepresentations and omissions were relevant to establishing probable cause.

To be entitled to a Franks hearing, a defendant must make "a substantial preliminary showing" not only that the affidavit contained false information, but that the inaccuracies were the result of "deliberate falsehood or reckless disregard for the truth" and were "necessary to the finding of probable cause." Franks, 438 U.S. at 155–56, 171; see also United States v. Mathison, 157 F .3d 541, 547–48 (8th Cir. 1998). A Franks hearing is appropriately granted only in "very limited circumstances." United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir.1995).

The R&R recommends denying the portion of the Franks hearing motion pertaining to Officer Hamilton's alleged misrepresentations in the affidavit about his "many" interactions with Randle, including multiple arrests. The R&R found these alleged misrepresentations do not warrant a Franks hearing, because if the challenged statement were omitted from the affidavit, the affidavit would still support probable cause that Randle was engaging in criminal activity. This Court agrees.

The R&R recommends granting the portion of the Franks motion pertaining to Officer Hamilton's failure to include in the affidavit that Randle's address information on his state I.D. and vehicle registration was different than the address for the Residence he provided the U.S. Probation Office. The R&R concluded this information would have been critical to the issuing judge's determination of whether probable cause existed to search the Residence.

**1. Government's Objection**

The Government objects to the R&R's conclusion that Officer Hamilton's omission of

Randle's alternate address information from the affidavit warrants a Franks hearing. The Government argues that the differing address information was not material to the probable cause determination, because Randle reported the Residence as his address to the U.S. Probation Office and drove there after the controlled buy. The Government contends this information shows Randle was living at the Residence or, at the very least, periodically staying there.

Given that at the time of the search Randle was on supervised release and was being actively supervised by the U.S. Probation Office, Randle's address on record with the Probation Office is strong evidence of where he was living. The Residence is where Randle's probation officer was told to find him. The use of the word "currently" in describing Randle's supervised release status suggests that it may be a more recent address than others on record. Although Randle may have had other residences where he occasionally stayed or received mail, the Probation Office records establish that the Residence on Vera Cruz Lane is at least one of his residences. Based on these circumstances, it was not deliberately false or reckless to omit the alternate address information from the affidavit. For the same reasons, it was not false—much less deliberately misleading or deceitful—for Officer Hamilton to characterize the address currently on file with the U.S. Probation Office as Randle's "home."

Randle has not satisfied his "substantial preliminary showing" that Officer Hamilton's omission of Randle's alternate address information amounted to a "deliberate falsehood or reckless disregard for the truth." Franks, 438 U.S. at 155, 171. Given the totality of the evidence, there was no attempt to mislead the issuing judge. The Government's Objection on this issue is sustained.

### 2. Randle's Objection

Randle objects to the R&R's determination that he is not entitled to a <u>Franks</u> hearing regarding Officer Hamilton's alleged misstatements about his prior history with Randle. The Objection is overruled because the reliable CRI's tip, corroborated by the controlled buy, was sufficient to establish probable cause to believe Randle was trafficking drugs. <u>See</u> <u>United States v. Gabrio</u>, 295 F.3d 880, 883 (8th Cir. 2002) (stating that a reliable informant's tip establishes probable cause if the tip is corroborated by independent evidence); <u>United States v. Warren</u>, 42 F.3d 647, 652 (D.C. Cir. 1994) (holding probable cause existed where a reliable tip about drug activity was corroborated with a controlled buy).

Randle has not satisfied the substantial preliminary showing for a <u>Franks</u> hearing. The motion for a <u>Franks</u> hearing is denied.

### C. Discovery Motions

Randle has moved for supplemental discovery to explore Officer Hamilton's omission of the conflicting address information from the affidavit, as well as Officer Hamilton's alleged misrepresentations in the affidavit of his past interactions with Randle. The R&R recommends granting the discovery motions with respect to the omitted address information, but denying the motions to the extent they seek information related to Officer Hamilton's statements about his past interactions with Randle.

Randle objects to the partial denial of the discovery motions. The Objection is overruled because Randle is not entitled to a <u>Franks</u> hearing. The discovery motions are denied in their entirety.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Johntez Leondis Randle's Objection [Docket No. 108] to Magistrate Judge Tony N. Leung's January 28, 2020 Report and Recommendation [Docket No. 103] is **OVERRULED**;

2. Plaintiff United States of America's Objection [Docket No. 109] to the R&R is **OVERRULED IN PART** and **SUSTAINED IN PART**;

3. The Report and Recommendation [Docket No. 103] is **ADOPTED IN PART** and **DECLINED IN PART**;

4. Randle's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 21] is **DENIED**;

5. Randle's Motion for Hearing Pursuant to <u>Franks v. Delaware</u> [Docket No. 22] is **DENIED**; and

6. Randle's Motions for Supplemental Discovery [Docket Nos. 39, 66] are **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: April 7, 2020